COMMONWEALTH vs. BARRY SANDERSON.

Franklin. September 10, 1986. — December 10, 1986.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Arrest. Probable Cause. Search and Seizure,* Threshold police inquiry,
. Probable cause. *Constitutional Law,* Search and seizure.

Where State police stopped an automobile and, by positioning their cruisers
    at its front and back, completely impeded its movement; where, before
    formally arresting the operator of the vehicle on drug-related charges
    State police officers detained him for approximately forty minutes while
    a total of six troopers assembled together with a dog trained to detect
    narcotics by smell; and where, during this period, the operator was not
    free to leave and could not have reasonably believed he was free to
    leave, the police conduct, from the outset, constituted an arrest of the
    operator and a seizure of the automobile, rather than an investigatory
    stop governed by the principles articulated in *Terry* v. *Ohio,* 392 U.S.
    1 (1968), and, consequently, since the police concededly lacked probable
    cause to arrest the defendant and search the automobile at the time of
    the stop, quantities of controlled substances seized from the operator's
    , pockets and knapsack, after the dog was permitted to sniff inside and
    outside the car, were to be suppressed from evidence at his trial. [765-
    ` 767]

INDICTMENTS found and returned in the Superior Court De-
partment on November 20, 1984.

A pretrial motion to suppress evidence was heard by *Law-
rence B. Urbano,* J.

An application for an interlocutory appeal was allowed in
the Supreme Judicial Court for the county of Suffolk by *Liacos,*
J., and the appeal was reported by him to the full court.

*Charles K. Stephenson,* Assistant District Attorney, for the
Commonwealth.

*Thomas Lesser (William Newman* with him) for the defend-
ant.

ABRAMS, J. On November 20, 1984, the defendant, Barry
Sanderson, was indicted for possession of marihuana, G. L.

c. 94, § 34 (1984 ed.); and possession of cocaine with intent to distribute, G. L. c. 94C, § 32E(*b*)(1) (1984 ed.). On November 4, 1985, the defendant filed a motion to suppress the physical evidence taken from his person and his knapsack. The defendant asserts that those items are the fruits of an arrest made without probable cause and without an arrest or search warrant. A judge of the Superior Court held a hearing and allowed the defendant's motion.[1] The Commonwealth appealed the ruling pursuant to Mass. R. Crim. P. 15(b)(2), 378 Mass. 882 (1979), and a single justice of this court granted the Commonwealth's request for leave to take an interlocutory appeal. We affirm the order granting the defendant's motion to suppress.

The events leading up to the defendant's arrest, as presented in a statement of agreed facts, are as follows. From June, 1984, through October, 1984, the State troopers in Shelburne received anonymous communications which alleged that the defendant had been dealing in marihuana and cocaine in the Charlemont area for approximately one year. The State troopers were not able to corroborate any suspicious activity by the defendant. In one instance, the troopers received an anonymous letter, which stated that the defendant traveled to New York every week to purchase cocaine from his supplier in Greenwich Village. Sometime later, on June 15, 1984,[2] a trooper received an anonymous telephone call, informing him that the defendant would be traveling to New York to purchase cocaine in the next two days. The caller identified the defendant's automobile as an Oldsmobile Cutlass. The caller also stated that the defendant usually took the bus from Springfield and left his car at the bus station. Although the trooper was able to confirm that

---

[1] The judge did not make specific findings. Instead, he stated that the motion was "presented on an agreed statement of facts. Findings are not necessary. An appellate court will have the same record as is before me. I am persuaded by the reasoning expressed in the defendant's memorandum. Accordingly, MOTION ALLOWED."

[2] In an unrelated matter in 1983, the defendant was convicted of possession of marihuana with intent to distribute. The troopers conducting the instant investigation had this information in June of 1984.

the defendant did indeed own an Oldsmobile Cutlass, the defendant's automobile was not found in the parking lot at the Springfield bus station at any time during the next two days.

The anonymous informant phoned the trooper conducting the investigation approximately twenty times. The caller informed the trooper that the defendant worked at a realty office in Shelburne. The anonymous informant also stated during at least four phone calls that the defendant would be traveling to New York on the bus from Springfield. On each of these occasions, the troopers checked the bus terminal but did not see the defendant or his automobile. The trooper did not know the caller or the source of the caller's knowledge. The trooper did not have any means by which he could communicate with the informant.

On August 31, 1984, State troopers executed a search warrant in a different investigation at a home in Clarksburg. Several grams of cocaine were found in this search. In addition, several business cards were discovered, including the defendant's card from the realty office. One of the informants who had provided information for this August 31 search[3] told a trooper in another office that he had heard "on the street" that the defendant was a major drug dealer. In addition, that informant stated that, during the summer of 1984, he observed several ounces of marihuana in the defendant's automobile.

Two months later, on October 30, 1984, the original anonymous informant called the trooper and informed him that the defendant would be traveling to Greenwich Village to purchase cocaine.[4] The caller stated that the defendant would take the next day, November 1, 1984, off from work to prepare the cocaine for sale. The informant also stated that the defendant had recently dented his car. Finally, the caller stated, as he

---

[3] This informant's tips had led to the arrest of two people and the seizure of controlled substances, and therefore the troopers considered this informant reliable.

[4] The caller did not state whether the defendant would be traveling by bus or by car. The informant stated that the defendant was going to New York to attend a Halloween party, in addition to purchasing cocaine. That evening one investigating officer saw news coverage of a Halloween street party in Greenwich Village. No mention was made of the defendant.

had on prior occasions, that the defendant carried the cocaine in a knapsack.

The troopers established surveillance of the realty office and observed the defendant leave in his automobile at 2 P.M. The troopers had planned to follow the defendant, but were unsuccessful. The troopers did confirm that the defendant was not expected at work again until November 2.[5] In addition, the troopers checked the defendant's home in the middle of the night to confirm that he had not returned. The next morning an officer phoned the realty office again and was told that the defendant had gone to New York and would return on November 2.

Two troopers were dispatched to a position on Route 91 in Whately to watch for the defendant's automobile. The troopers spotted the defendant's vehicle at 11:30 A.M. and followed it. The troopers then called the State police barracks to state they had the defendant's vehicle in view. An officer at the barracks ordered the troopers to stop the defendant's automobile.[6] They stopped the vehicle at the junction of the exit ramp of Route 91 and Route 2 in Greenfield. One trooper parked in front of the defendant's vehicle and one trooper parked behind the vehicle. Two troopers approached the defendant and asked for his license and registration. After the defendant produced those items, the troopers ordered him to step out of his automobile. The defendant did so and brought with him a yellow knapsack. Because the officers had no reason to believe the defendant was armed, they did not frisk him or draw their weapons. The defendant was not free to leave. The troopers told the defendant

---

[5] At this point, the police consulted with an assistant district attorney, who advised that in his opinion there was probable cause to obtain a search warrant. Despite this conclusion, the troopers did not prepare a warrant. On appeal, the Commonwealth admits that this determination of probable cause was erroneous. The Commonwealth now agrees that at that time there was no probable cause to search the defendant's automobile. See *infra* at 767.

[6] In the time between the troopers' reporting the spotting of the defendant's automobile and receiving the order to stop the defendant, another trooper telephoned an assistant district attorney. The attorney told the trooper that in his opinion that there was probable cause to search the automobile and instructed the trooper to stop the defendant's vehicle.

that he was under investigation for drug trafficking and recited the warnings mandated by *Miranda* v. *Arizona,* 384 U.S. 436 (1966). For approximately the next thirty minutes, no State trooper spoke to or questioned the defendant.

As the two troopers waited for a superior officer (a sergeant) and other troopers to arrive, they walked around the vehicle. Each officer observed marihuana on the floor of the automobile.[7] Within ten minutes after the two troopers stopped the defendant, three more State troopers arrived at the scene. One trooper was accompanied by a K-9 dog, "Trooper Thor." Trooper Thor had been trained to detect narcotics by smell. At that time, the troopers ordered the defendant to step thirty feet away from his automobile and to leave his knapsack near the vehicle. Trooper Thor then sniffed in and around the automobile and seized the knapsack on two separate occasions. Approximately twenty minutes later, after obtaining legal advice, the sergeant searched the defendant's pockets, which revealed two marihuana cigarettes, and searched his knapsack,[8] which yielded a plastic bag containing cocaine. The troopers then formally arrested the defendant for possession of marihuana and trafficking in cocaine, and repeated the Miranda warnings.

The Commonwealth argues that the initial detention of the defendant was an investigatory stop, and not an arrest and seizure. See *Adams* v. *Williams,* 407 U.S. 143 (1972); *Terry*

---

[7] This was the only fact on which the defendant and the Commonwealth did not agree. The Commonwealth stated that the officers observed a "roach," numerous seeds, and green vegetable matter which he concluded was marihuana. The defendant's version of the facts was that, although the officer testified to seeing marihuana, no physical evidence of this was introduced at the suppression hearing. The defendant's version continued that, based on the photographs introduced by the Commonwealth, the judge could not conclude that the substance on the floor was marihuana.

The marihuana spotted in the vehicle is irrelevant because the illegal arrest already had occurred. See *Commonwealth* v. *Bottari,* 395 Mass. 777, 785 (1985); *Commonwealth* v. *Borges,* 395 Mass. 788, 795 (1985).

[8] When Trooper Thor seized the knapsack, the defendant stated that the police could search it, but he withdrew his consent and denied having given consent when the sergeant asked him if he would permit a search of the knapsack. The Commonwealth does not claim that there was consent for the search.

v. *Ohio,* 392 U.S. 1 (1968). To determine whether the police action is tantamount to an arrest, it is necessary to consider the degree to which the defendant's movement is restrained, the degree of force used by the police, and the extent of the intrusion. See *Commonwealth* v. *Bottari,* 395 Mass. 777, 781 (1985). In analyzing an automobile stop situation, we also look to the number of police used to effectuate the stop and whether the movement of the automobile was impeded. *Bottari, supra.* The test is an objective one. See *Commonwealth* v. *Borges,* 395 Mass. 788, 791 (1985); *Commonwealth* v. *Meehan,* 377 Mass. 552, 559 (1979), cert. dismissed, 445 U.S. 39 (1980). "[I]f, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," a "seizure" of the person has occurred. *Borges, supra* at 791, quoting *United States* v. *Mendenhall,* 446 U.S. 544, 554 (1980). See *Commonwealth* v. *Avery,* 365 Mass. 59, 65 (1974).

"[T]here is no magic in the word 'arrest' " and an arrest may occur even if the police do not make a formal arrest. *Commonwealth* v. *Wallace,* 346 Mass. 9, 16 (1963). The troopers stopped their police cruisers in front of and in back of the defendant's car, completely impeding the automobile's movement. The Commonwealth agrees with the defendant that he was not free to leave.[9] See *Commonwealth* v. *King,* 389 Mass. 233, 241 (1983). The troopers detained the defendant for approximately forty minutes before formally arresting him. Initially, there were two State troopers present, but within a few minutes three more troopers arrived, along with Trooper Thor. Shortly thereafter, a sergeant arrived, totaling six State troopers

---

[9] While the subjective intent of the arresting officers is not controlling in differentiating between an investigatory stop and an arrest, it can be of some relevance. Compare *Massachusetts Gen. Hosp.* v. *Revere,* 385 Mass. 772, 778 (1982), rev'd on other grounds, 463 U.S. 239 (1983), with *Borges, supra* at 792-793 n.3. The *Massachusetts Gen. Hosp.* court, in defining arrest, stated that an arrest must be performed with an intent to effectuate the arrest. In this case, the troopers were operating under the erroneous belief that they had probable cause to search the vehicle. See, *supra,* notes 5 and 6.

and one dog. These factors are inconsistent with a brief *Terry*-type investigative stop "to determine [the defendant's] identity or to maintain the status quo momentarily while obtaining more information." *Adams* v. *Williams,* 407 U.S. 143, 146 (1972). Based on the police conduct in this case, a reasonable person would have believed that he was under arrest.[10]

The Commonwealth concedes that it did not have probable cause to arrest the defendant and search his car at the time of the stop because the informant was not known to the police; the information provided by the informant had been unreliable in the past; and the source of his information was unknown. Thus, there are no facts from which the police could conclude the informant was reliable or credible.[11] See *Bottari, supra* at 784; *Borges, supra* at 795; *Commonwealth* v. *Upton,* 394 Mass. 363, 375 (1985).

"Clearly the police here . . . were detaining the suspect for purposes of making a search for contraband. They were not merely, for their own protection, conducting a pat-down for weapons while they questioned a suspicious person. The requisite for a search and seizure in this Commonwealth is probable cause, and not the 'articulable suspicions' of *Terry.*" *Borges, supra* at 798 (Hennessey, C.J., concurring). We affirm the order granting the defendant's motion to suppress.

*So ordered.*

---

[10] Although there was no use of force by the troopers here, that is not decisive. The troopers had no reason to believe force was necessary to effectuate the arrest. The troopers never received any information indicating that the defendant carried weapons or posed a physical threat to the officers.

[11] The most detailed portions of the informant's information involved the description of the defendant's trips via the bus to Greenwich Village to buy cocaine. The police were unable to confirm this information on four different occasions. In fact, on the day of the defendant's arrest, he used his own car, instead of the bus, to travel to New York.