COMMONWEALTH vs. JOHN E. STAWARZ
(and eleven companion cases[1]).

No. 91-P-513.

Worcester. October 8, 1991. - March 9, 1992.

Present: PERRETTA, FINE, & JACOBS, JJ.

*Constitutional Law*, Search and seizure, Probable cause. *Search and Seizure*, Threshold police inquiry, Probable cause, Automobile. *Probable Cause*. *Arrest*.

When eight to ten police officers in four or five vehicles converged on and surrounded a vehicle the defendant was driving, without warning or signal, and without probable cause to arrest, they exceeded the bounds of a permissible investigative stop; evidence seized as a result of the unlawful arrest was properly suppressed. [214-215]    .

INDICTMENTS found and returned in the Superior Court Department on May 18, 1990.

Pretrial motions to suppress evidence were heard by *Herbert F. Travers, Jr.*, J.

An application for an interlocutory appeal was allowed by *Nolan*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Katherine E. McMahon*, Assistant District Attorney, for the Commonwealth.

*M. Page Kelley*, Committee for Public Counsel Services, for Michael A. Stawarz.

*Thomas C. Carrigan* for John E. Stawarz.

---

[1]Five of the companion cases are against John E. Stawarz and six are against Michael A. Stawarz. The defendants stand indicted for larceny and unauthorized use of a motor vehicle, various firearm related offenses, and unlawful possession of ammunition.

JACOBS, J. In this interlocutory appeal,[2] the Commonwealth seeks reversal of an order of a Superior Court judge suppressing evidence seized from the defendants after an arrest. We hold that the evidence was seized incident to an unlawful arrest and therefore affirm the judge's order.

We take the facts as found by the judge and as supported by the uncontroverted testimony of two Worcester police officers, the sole witnesses at the hearing on the motion to suppress. At 9:50 P.M. on February 21, 1990, the two officers, Francis Hackett and James Rooney, while on duty in an unmarked vehicle, received a police radio report that a late 1970's model blue Ford LTD automobile had been stolen. At or about 10:50 P.M. the officers observed a "late seventies" blue Ford LTD parked approximately a mile and one-half from where the theft had occurred. The driver and only apparent occupant of the vehicle was acting suspiciously, "turning his head and looking about." After the officers drove by the Ford a second time, they saw it drive off and noticed that a second person was in the vehicle. The officers followed in their unmarked vehicle and, in keeping with their usual procedure, called for a marked cruiser to assist them in making a stop. After a short while, during which the Ford was operated lawfully, four or five marked police cruisers[3] and the unmarked vehicle converged upon the Ford almost simultaneously. The judge found this convergence to be unintentional. One of the cruisers forced the Ford to stop by cutting off its path while the other cruisers and the unmarked vehicle surrounded it, blocking it from the rear and on each side. At that point, some of the uniformed officers were alighting from their vehicles. There were at least eight to ten police officers present, all but two in uniform. Officers Hackett and Rooney stopped their vehicle behind the Ford and approached it on foot. Hackett saw through the passenger win-

---

[2]The Commonwealth's application for interlocutory appeal was allowed by a single justice of the Supreme Judicial Court. See G. L. c. 278, § 28E; Mass.R.Crim.P. 15(b)(2), 378 Mass. 884 (1979).

[3]The judge found that six cruisers responded to the radio call. The testimony of the two police officers who were the sole witnesses at the suppression hearing supports a finding of no more than four or five cruisers.

dow that the ignition lock was missing and the steering column was damaged. The occupants of the Ford (the defendants) were then ordered out of the vehicle and patted down. The vehicle search followed. At no time did any officer at the scene draw a gun. Before they were ordered out of their vehicle, the defendants had not attempted to leave nor were they seen to react in any suspicious manner to the stop.

The officers' observation of a "late seventies" Ford LTD about an hour after, and a mile and one-half from, the place where a similarly described vehicle had been reported stolen, coupled with the suspicious behavior of the driver, supplied the police officers with sufficient basis for initiating a stop of the observed vehicle. *Terry* v. *Ohio*, 392 U.S. 1, 21 (1968). *Commonwealth* v. *Riggins*, 366 Mass. 81, 86 (1974) (*Terry* principles are applicable to automobile stops). See *Commonwealth* v. *Moses*, 408 Mass. 136, 140 (1990). It is clear that there was no probable cause for arrest until observation was made of the steering column, and the Commonwealth does not argue otherwise. The issue, therefore, is whether the circumstances preceding that observation constituted, or were tantamount to, an arrest. The test is whether "[t]he degree of intrusiveness on a citizen's personal security, including considerations of time, space, and force, [is] proportional to the degree of suspicion that prompted the intrusion." *Commonwealth* v. *Borges*, 395 Mass. 788, 794 (1985). "The pertinent inquiry is whether the degree of intrusion is reasonable in the circumstances." *Commonwealth* v. *Moses, supra* at 141. "The test is an objective one," although the subjective intent of the investigating officers may be relevant.[4] *Commonwealth* v. *Sanderson*, 398 Mass. 761, 766 & n.9 (1986).

The temporary immobilization by blocking of the vehicle was not, by itself, unreasonably intrusive. *Commonwealth* v.

---

[4] The only direct evidence of subjective intent was Officer Hackett's testimony that his purpose in stopping the vehicle was "[t]o ascertain whether or not it was the vehicle reported stolen." Such evidence is not controlling. *Commonwealth* v. *Sanderson, supra* at 766 n.9. "Use of the officer's subjective intention as a criterion has been rejected in cases where the officer's conduct is inconsistent with a mere momentary stopping." *Commonwealth* v. *Borges, supra* at 792 n.3.

*Moses, supra* at 142-143 & n.6. *Commonwealth* v. *Fitzgibbons,* 23 Mass. App. Ct. 301, 304 (1986). Similarly, the momentary time lapse between the stop and the approach of the officers was not unreasonable. Contrast *Commonwealth* v. *Sanderson, supra* at 766 (the police detained the defendant for approximately forty minutes). The pivotal question, therefore, is whether the police intrusion was reasonable in the 'circumstances. The resolution of that question involves an analysis of whether the force used was "proportional to the degree of suspicion that prompted the intrusion." *Commonwealth* v. *Borges, supra* at 794. This inquiry, of necessity, should be made in light of any reasonable concerns by the police officers for their personal safety or for that of the general public. See *Commonwealth* v. *Moses, supra* at 142; *Commonwealth* v. *Fitzgibbons, supra* at 304. We agree with the finding of the trial judge that the suspicion of the police was of a level "just beyond impermissible hunch." The radioed description of the stolen vehicle, without mention of a registration number, was skeletal, and the "suspicious" actions of the first observed suspect were not particularly distinctive. Conversely, the degree of force utilized by the police was substantial and perhaps extravagant considering the nature of the crime under investigation. See *Commonwealth* v. *Fitzgibbons, supra* at 306. So far as the record indicates, the police officers, without warning or signal, stopped the defendants by blocking the path of their vehicle. That act, coupled with the surrounding of the defendants' vehicle by four or five cruisers, the presence of eight to ten uniformed officers, some leaving their vehicles, and the approach of two officers toward the suspects, clearly created the objective impression that this was more than a routine investigatory inquiry and that the suspects were not free to leave. That reasonable perception of restraint of freedom marks an arrest. *Commonwealth* v. *Borges,* 395 Mass. at 791-793. The fact that there is no evidence that the uniformed officers used any force after alighting from their vehicles is not decisive. *Commonwealth* v. *Sanderson,* 398 Mass. at 767 n.10. Coupled with the abrupt stop and encirclement of the vehicle, the substan-

tial police presence "was only a prelude to escalating force, signaling arrest." *Commonwealth* v. *Blake*, 23 Mass. App. Ct. 456, 462 (1987).

Smacking more of invasion than inquiry, the acts of the police could be justified only on the grounds of concern for their own or others' safety. However, neither the testimony of the police officers nor reasonable inferences drawn from the circumstances,[5] see *Commonwealth* v. *Fitzgibbons*, 23 Mass. App. Ct. at 306-307 & n.5, support a conclusion of any unusual threats to safety. While the growing violence faced by those who enforce the law perhaps renders reasonable safety measures which once would have been thought to be excessive, the police reaction here, on this record, violates the principle of proportionality recognized in *Commonwealth* v. *Borges*, 395 Mass. at 794. The order allowing the motion to suppress is affirmed.

*So ordered.*

---

[5]While one might readily suspect that the appearance of the several police cruisers was more than coincidental, nothing in the record explains or justifies the substantial police presence or tends to controvert the judge's finding that the convergence was unintentional.