COMMONWEALTH *vs.* PAUL R. ANDREWS.

No. 92-P-568.

Plymouth. January 15, 1993. - April 15, 1993.

Present: KASS, GILLERMAN, & PORADA, JJ

*Robbery. Search and Seizure,* Threshold police inquiry, Probable cause. *Arrest. Constitutional Law,* Search and seizure. *Joint Enterprise.*

A police officer had a reasonable suspicion based on specific and articulable facts that the defendant was involved in a robbery, and the police acted reasonably in the circumstances in stopping the defendant's car and detaining its occupants, and their actions did not exceed the limits of a permissible *Terry* stop. [327-330]

A special police officer of a town had the authority to make a *Terry* stop in that town. [330]

Evidence at a criminal trial was sufficient to establish the defendant's participation in a robbery as a joint venturer and to establish his knowledge that his coventurers were armed. [330-331]

The judge at a criminal trial did not abuse his discretion in denying the defendant's motion for a continuance made on the day set for trial. [331]

No error was demonstrated at a criminal trial by the prosecutor's comments on the defendant's credibility. [331-332]

INDICTMENT found and returned in the Superior Court Department on July 25, 1989.

A pretrial motion to suppress evidence was heard by *Suzanne V. DelVecchio*, J., and the case was tried before *J. Harold Flannery*, J.

*Stephen H. Merlin* for the defendant.

*Mary O'Sullivan Smith*, Assistant District Attorney, for the Commonwealth.

PORADA, J. The defendant appeals from his conviction, by a jury in the Superior Court, of armed robbery. The Commonwealth's case was based on a joint venture theory that the defendant and three others — James Leahy, Louis Barone, and Salvatore Tibaudo — participated in the rob-

bery of the Hanover Coin jewelry store on June 7, 1989. Barone and Tibaudo were asserted to be the two men who robbed the lone store employee at about 4:00 P.M. that day. The defendant was alleged to have "cased" the store the day before the robbery and driven the getaway car. The defendant's principal claim of error is that the jewelry and weapons found at the place of arrest and the identifications of Barone and Tibaudo should have been suppressed as the fruits of an unlawful arrest made without probable cause.

The defendant also argues that the East Bridgewater police officer who stopped and detained the defendant had no authority to act as a police officer in the town of Whitman, where the stop occurred. The motion judge found that when the defendant was stopped by the police, the police had probable cause to arrest him at that point or, in the alternative, reasonable suspicion to make an investigative stop and to detain the defendant until police officers arrived from the town in which the armed robbery was committed. The motion judge also found that the East Bridgewater police officer had the authority to act as a police officer in the town of Whitman, because he was sworn in as a special police officer in that town. We affirm the judgment for the reasons stated.

We summarize the facts gleaned from the motion judge's findings. Shortly after 4:00 P.M. on June 7, 1989, Sergeant Markowicz of the East Bridgewater police department received a State police radio report that an armed robbery had occurred in the town of Hanover and a 1988 blue Pontiac automobile with registration number 950-TCX may have been involved in the robbery. Sergeant Markowicz knew that the car belonged to the defendant. He relayed this information to his fellow officer, Sergeant Davidson, who immediately left for the defendant's residence in the neighboring town of Whitman, where Davidson was also a special police officer. When, upon his arrival, he did not see the defendant's car in the driveway, Davidson parked his vehicle a few doors from the defendant's residence, which Davidson knew was also occupied by a woman and at least one small child. After waiting five to six minutes, Davidson saw the 1988 blue Pon-

tiac driven by the defendant pull into the driveway. There were three other men in the car. Davidson immediately drove his cruiser onto the lawn of the defendant's residence, blocking the defendant's vehicle from the rear. Davidson then got out of his vehicle and with his gun drawn ordered the defendant and two of his three companions, who had emerged from the vehicle, to lie face down on the ground and the third to remain in the car with his hands on his head. Davidson then held the four men at gunpoint for five to six minutes until he was able to flag down a passing Department of Correction van. The officers in the van contacted the Whitman police for him. Additional officers then arrived from the East Bridgewater and Whitman police departments.[1] Upon their arrival, the police officers pat frisked and handcuffed the four defendants and held them on the lawn of the defendant's house to await the arrival of the Hanover police.

About fifteen minutes after Officer Davidson first observed the defendant's car, Hanover police arrived with the store employee who had been robbed. The store employee identified two of the men, Barone and Tibaudo, as the two men who had robbed the store and a third, Leahy, as someone she recognized but could not place. All four men were then placed under arrest and transported to the Hanover police station. The police then searched the defendant's vehicle and uncovered evidence of the robbery.

The police officer who furnished the description of the defendant's vehicle for the radio broadcast was Officer Tyrie of the Hanover police department. On the day before the robbery, he had investigated a report by a clerk at the Stephen Leigh jewelry store in Hanover that two white men had visited the store and acted as if they were "casing" the store. The clerk gave Officer Tyrie descriptions of the two men and of the car they were driving, including the registration number. Tyrie learned that the car was registered to the defendant, who had a record of breaking and entering and robberies. The next morning (the morning of the robbery) Tyrie

---

[1]The motion judge made no findings relating to the number of officers who came to Officer Davidson's assistance.

had obtained a photograph of the defendant and had shown it to the clerk at the Stephen Leigh store, who identified the defendant as one of the two suspicious males who had visited the store the day before. Another jewelry store owner in the same area also identified the defendant as one of two white males who had visited his store the day before.

When Officer Tyrie heard the report of an armed robbery by two white males at the Hanover Coin jewelry store, which was located in close proximity to these two stores, he had his dispatcher broadcast a description of the defendant's car as possibly being involved in the robbery. While Officer Tyrie was en route to the scene of the robbery, his dispatcher also obtained from the victim of the robbery a description of the two white males, one of whom was described as wearing a dark shirt with a Coca Cola logo emblazoned on it. One of the four men stopped by Officer Davidson was wearing a shirt that matched this description, but Officer Davidson was unaware of the victim's statement when he stopped the defendant and his three companions. The victim did not see the car used by the robbers.

Based on the collective knowledge of Officer Tyrie and Sergeant Davidson, we conclude that Sergeant Davidson had the right to make an investigative stop of the defendant when he saw the defendant pull into his driveway but that he did not have probable cause to make an arrest. Compare *Commonwealth* v. *Riggins*, 366 Mass. 81, 86-87 (1974) (reasonable suspicion for a stop existed where police officers knew that there had been a robbery, that two male robbers were involved, and that the robbers had left the scene in a red car, and the arrival of the red car was observed at a time consistent with the time necessary to travel from the scene of the robbery); *Commonwealth* v. *Fitzgibbons*, 23 Mass. App. Ct. 301, 302, 307 (1986) (police officers justified in making an investigative stop of a car matching the description and registration plate number of car reported to be occupied by a male with a handgun who allegedly had pointed the weapon at a group of people); *Commonwealth* v. *Stawarz*, 32 Mass. App. Ct. 211, 213 (1992) (reasonable suspicion for stop

found when police observed a late 1970's model Ford LTD automobile about an hour after and a mile and one-half from the place where a similarly described vehicle was reported stolen). See also *Commonwealth v. Johnson*, 6 Mass. App. Ct. 944, 945-946 (1978). Here, there was ample evidence that Officer Tyrie, who was responsible for the broadcast which led Officer Davidson to stop the defendant, had a reasonable suspicion based on specific and articulable facts that the defendant was involved in the robbery. See *Commonwealth v. Fraser*, 410 Mass. 541, 545-546 (1991); *Commonwealth v. Cheek*, 413 Mass. 492, 494-495 (1992). There is also no question that the Hanover police had probable cause to arrest the defendant once the victim arrived on the scene and identified two of the defendant's companions as the two men who had robbed her. As in *Commonwealth v. Stawarz*, 32 Mass. App. Ct. at 213, the issue then becomes whether the police conduct preceding the victim's identification was tantamount to an arrest.

Before the victim's identification, Officer Davidson had blocked the defendant's vehicle in the driveway and ordered three of the four men at gunpoint to lie face down on the ground and the other to remain in the vehicle with his hands on top of his head. Upon the arrival of other officers, the defendants were pat frisked and handcuffed. The motion judge found that under the circumstances the police acted reasonably in order to protect themselves and others and that the conduct of the police was reasonable and proportional to the degree of suspicion and, consequently, did not exceed the permissible limits of a *Terry* stop.[2] Compare *Commonwealth v. Moses*, 408 Mass. 136, 141 (1990). We agree.

In deciding whether the actions of the police exceed the scope of an investigative stop, the pertinent inquiry is whether the degree of intrusion is reasonable under the circumstances. *Commonwealth v. Moses*, 408 Mass. at 141. To be reasonable, "[t]he degree of intrusiveness on a citizen's personal security, including considerations of time, space,

---

[2]*Terry v. Ohio*, 392 U.S. 1 (1968).

and force, must be proportional to the degree of suspicion that prompted the intrusion." *Commonwealth* v. *Borges*, 395 Mass. 788, 794 (1985). Here, there is no question that Officer Davidson, acting alone and facing four men, who may just have committed an armed robbery, was justified out of concern for his own safety and the safety of others in blocking the defendant's vehicle and holding the four men at gunpoint. *Commonwealth* v. *Fitzgibbons*, 23 Mass. App. Ct. at 307-309. Cf. *Commonwealth* v. *Bottari*, 395 Mass. 777, 778-779 (1985) (blocking of defendant's auto and ordering occupants out at gunpoint could not be justified during a threshold inquiry based on informant's report that defendant had gun, where police had no concern for their safety or the safety of others at the time of the inquiry). The police likewise out of concern for their own safety and the safety of others were justified in conducting a pat frisk. See *Commonwealth* v. *Cantalupo*, 380 Mass. 173, 176 (1980); *Commonwealth* v. *Fraser*, 410 Mass. at 544-547; *Commonwealth* v. *Patti*, 31 Mass. App. Ct. 440, 443 (1991). The handcuffing of the defendants is, however, more troublesome. We have, however, recognized that "the use of cuffs, if necessary to accomplish a permissible inquiry, does not convert a *Terry* stop to an arrest." *Commonwealth* v. *Pandolfino*, 33 Mass. App. Ct. 96, 98 (1992). See also *United States* v. *Bautista*, 684 F.2d 1286, 1289-1290 (9th Cir. 1982), cert. denied, 459 U.S. 1211 (1983) (handcuffing permitted for investigative stop where two armed robbery suspects appeared nervous and one suspect was pacing up and down); *United States* v. *Laing*, 889 F.2d 281, 285-286 (D.C. Cir. 1989), cert. denied sub nom. *Martin* v. *United States*, 494 U.S. 1008 (1990) (force used in *Terry* stop may include using handcuffs and forcing defendants to lie on the ground where circumstances make such force reasonable). In this case, where the police had a reasonable suspicion that the defendant and his three companions had committed an armed robbery only minutes earlier and the police had a legitimate concern for their own safety and their ability to control four potentially armed individuals, the restrictions imposed upon the defendants' liberty

for a relatively short period[3] did not exceed the limits of a permissible *Terry* stop. See generally *Commonwealth* v. *Borges*, 395 Mass. at 792 n.3. Once the victim identified two of the defendant's companions as the two men who robbed her, the police had probable cause to arrest the defendant and to search his vehicle for the fruits of the crime. See *Carroll* v. *United States*, 267 U.S. 132, 159-162 (1925); *Commonwealth* v. *Wunder*, 407 Mass. 909, 912-913 (1990).

The defendant's claim that Sergeant Davidson lacked the authority to make the stop must also fail. As a special police officer in Whitman, he would have had the same authority as a Whitman police officer to act in this matter. G. L. c. 41, § 99. *Commonwealth* v. *Kerr*, 409 Mass. 284, 287 (1991). The motion to suppress was properly denied.

There is no merit to the defendant's other claims of error.[4] He claims that the trial judge erred in denying his motions for a required finding of not guilty and for a new trial, because the Commonwealth's proof was insufficient to establish the defendant's guilt of armed robbery on a theory of joint venture. A joint venturer is "one who aids, commands, counsels, or encourages commission of a crime while sharing with the principal the mental state required for the crime." *Commonwealth* v. *Soares*, 377 Mass. 461, 470, cert. denied, 444 U.S. 881 (1979). The Commonwealth relied upon a theory that the defendant had participated as a joint venturer in the planning of the robbery and in the execution of it by driving the getaway car. To prove this theory, the Commonwealth introduced evidence to show that the defendant and a companion had visited the Hanover Coin store and two other jewelry stores the day before the robbery; that all of these

---

[3]The motion judge found that only about fifteen minutes elapsed between the time Davidson stopped the car and the victim arrived on the scene.

[4]Although the defendant argues in his brief that the trial judge failed to give the jury an instruction based on *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980), defense counsel at trial acknowledged that the judge did give such an instruction. In any event, the giving of such an instruction lies within the sound discretion of the judge. *Commonwealth* v. *Reid*, 29 Mass. App. Ct. 537, 540-541 (1990). There was no abuse of discretion shown in the circumstances of this case.

stores were in close proximity to one another; that on the day of the robbery both Leahy and Barone visited the store before the robbery; and that immediately after the robbery committed by Barone and Tibaudo at gunpoint, the defendant, accompanied by Leahy, Barone, and Tibaudo, was seen arriving in his car at his residence located not far from the scene of the robbery. Further, there was evidence that after the robbery the store employee found on the floor of the store a sawed-off shotgun which had not been there before the robbery and that the police found a toy gun in the back seat of the defendant's car and, in the trunk of the defendant's car, a .38 Smith & Wesson handgun and the jewelry, cash, and handbag stolen in the robbery. This evidence was sufficient to establish the defendant's participation in the robbery as a joint venturer and his knowledge that his coventurers were armed. See *Commonwealth* v. *Giang*, 402 Mass. 604, 608-610 (1988); *Commonwealth* v. *Stewart*, 411 Mass. 345, 352 (1991).

The trial judge did not abuse his discretion in denying the defendant's motion for a continuance on the day set for trial. *Commonwealth* v. *Bryer*, 398 Mass. 9, 15 (1986). The defendant sought the continuance to learn the identity of a woman whose picture had appeared in a local newspaper at the time of the defendant's arrest. The picture depicted the woman looking out her window at the scene on the defendant's lawn at the time of his arrest. Needless to say, defense counsel had ample opportunity to obtain this information long before the trial date, and there was no showing that the woman possessed any information material to the defendant's case.

Finally, the defendant argues that the prosecutor committed reversible error in suggesting to the jury that the defendant was not telling the truth when he said he did not live at the address where he was stopped by the police. A prosecutor may certainly argue that the defendant is not a credible witness. *Commonwealth* v. *Krepon*, 32 Mass. App. Ct. 945, 946 (1992). Moreover, the judge and counsel made it clear to the

jury that they were the finders of the facts and the sole judges of the credibility of the witnesses. *Ibid.*

*Judgment affirmed.*
*Order denying motion for*
*new trial affirmed.*