NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12826


MARK S. TINSLEY  vs.  TOWN OF FRAMINGHAM & others.[1]



Middlesex.     April 9, 2020. - September 17, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, & Kafker, JJ.[2]


Civil Rights, Availability of remedy.  Collateral Estoppel.
    Massachusetts Civil Rights Act.  Police Officer.  Arrest.
    Emotional Distress.  Assault and Battery.  Practice, Civil,
    Summary judgment.



    Civil action commenced in the Superior Court Department on
May 12, 2014.

    The case was heard by Bruce R. Henry, J., on a motion for
summary judgment, and entry of final judgment was ordered by
him.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    The case was submitted on the briefs.
    Robert C. Johnson, Jr., for the plaintiff.
    Bradford N. Louison for the defendants.

_____

    [1] Board of selectmen of Framingham; Dinis G. Avila; Joseph
Godino; James Green; Jason Lurie; and Gregory Reardon.

    [2] Chief Justice Gants participated in the deliberation on
this case prior to his death.

<u>James S. Timmins</u> & <u>Maura E. O'Keefe</u> for Massachusetts Municipal Lawyers Association, amicus curiae.

LOWY, J.   In this disturbing case we must determine the extent to which the criminal convictions of the plaintiff, Mark S. Tinsley, on charges related to his arrest affect the validity of his civil claims against the police officers who arrested him.   The incident at issue began with a routine traffic stop of the plaintiff, a Black man, by two police officers and ended in a physical altercation during which five police officers, none of whom were Black, forcibly removed Tinsley from the vehicle and wrestled him to the ground.   Following this altercation, he was charged with numerous offenses, and a jury ultimately convicted him of assault and battery on a police officer, disorderly conduct, resisting arrest, and carrying a dangerous weapon.   While the criminal case was pending, Tinsley filed a civil action in the Superior Court alleging that the officers violated his civil rights and committed a variety of torts during the incident.   Tinsley has appealed from the allowance of the defendants' motions for summary judgment on his civil action.

In <u>Heck</u> v. <u>Humphrey</u>, 512 U.S. 477 (1994), the United States Supreme Court held that a plaintiff previously convicted of a crime in State court may not use a Federal civil rights suit to attack that conviction collaterally in Federal court.   To

proceed in a civil action for damages based on "harm caused by actions whose unlawfulness would render [his] conviction or sentence invalid," the plaintiff must demonstrate that his civil action, if successful, would not "necessarily imply the invalidity of his conviction."[3]  Id. at 486-487.  We decline to adopt the holding in Heck in its entirety;[4] instead, we adopt only its guiding principle:  a plaintiff may not use a State civil action, including one brought under the Massachusetts Civil Rights Act (MCRA), G. L. c. 12, §§ 11H & 11I, to collaterally attack his or her State criminal conviction.  See Heck, supra.  Therefore, we conclude that a plaintiff's civil action may only proceed where it is based on facts, viewed in the light most favorable to the plaintiff, beyond those that were necessary to sustain the plaintiff's prior criminal conviction, and where the plaintiff demonstrates, in response to the defendant's motion for summary judgment, that his or her claims, should they succeed, would not necessarily challenge the

---

[3] The plaintiff also may proceed by demonstrating that his conviction was reversed on direct appeal or otherwise invalidated or called into question.  See Heck v. Humphrey, 512 U.S. 477, 486-487 (1994).  We need not address this circumstance here, as the Appeals Court affirmed the plaintiff Mark Tinsley's convictions, and Tinsley does not assert that his convictions were otherwise invalidated.

[4] We do not adopt the holding in Heck in its entirety to provide plaintiffs with a greater opportunity to litigate their State claims of alleged civil rights violations, as well as any attendant claims, than they may have under the Federal doctrine.

validity of his or her prior criminal conviction. See Lynch v. Crawford, 483 Mass. 631, 641 (2019).

As to Tinsley's claims, for the reasons set forth infra, our conclusion bars his claims only to the extent that they are based on the events that occurred while he was still inside his vehicle. His convictions, narrowly construed, were based on his conduct only while he was inside his vehicle, and he is collaterally estopped from challenging the facts necessary to sustain his convictions. Our conclusion does not, however, bar the claims that Tinsley bases on the events that occurred after the police officers forcibly removed him from his vehicle. Accordingly, we affirm in part, and we vacate and remand in part.[5]

Background. Because the viability of Tinsley's claims directly relates to the facts on which the claims rely, we must bifurcate the facts, viewing each set of facts through different lenses. Because we conclude that the events that occurred when Tinsley was inside his vehicle could have sustained his criminal convictions, and because we conclude that Tinsley is collaterally estopped from challenging any facts that the jury necessarily found to sustain those convictions, we recite those facts as the jury could have found them. See Aetna Cas. & Sur.

---

[5] We acknowledge the amicus brief submitted by the Massachusetts Municipal Lawyers Association.

Co. v. Niziolek, 395 Mass. 737, 742 (1985) (former criminal defendant may be collaterally estopped from "relitigating an issue decided in the criminal prosecution"). However, because we conclude that the events that occurred after the police officers removed Tinsley from his vehicle -- for the purposes of review of the Superior Court judge's allowance of the defendants' motion for summary judgment -- did not form the basis for Tinsley's criminal convictions, we recite those facts in the light most favorable to Tinsley, the nonmoving party. See Lynch, 483 Mass. at 641.

1. Facts. Around 9:15 P.M. on May 27, 2012, Detective Joseph Godino and Officer Greg Reardon observed a black Nissan Maxima speeding on a public street.[6] After conducting a search regarding the vehicle's license plate number, the officers learned that the vehicle was registered to Tinsley. Godino and Reardon activated the lights of their unmarked Ford Explorer and stopped the vehicle. Godino approached the vehicle on the passenger's side and observed Tinsley moving around in the driver's seat and reaching his left hand between his seat and the driver's side door. Godino alerted Reardon, who was approaching the driver's side of the vehicle, that he believed

---

[6] The police officers estimated that Tinsley was traveling forty to forty-five miles per hour in a twenty-five miles per hour zone.

that Tinsley was hiding something along the seat by the driver's side door.  At some point, Tinsley placed his hand in in his lap, where both officers observed a cellular telephone and a wallet.  Godino then observed Tinsley make a furtive movement toward the driver's side door.  Godino did not see anything in Tinsley's hands.

Because he was concerned that Tinsley might have a weapon, Reardon asked Tinsley to "step out of the vehicle."  Tinsley refused and asked why.  Reardon told him that he would explain everything after Tinsley got out of the vehicle.  Tinsley continued to refuse.  Godino reached into the vehicle from the passenger's side, shut it off, and removed the keys.  Tinsley then provided his license and registration but continued to refuse Reardon's repeated requests that he get out of the vehicle.

While Reardon and Tinsley were talking, Officer Dinis Avila and Officer Jason Lurie arrived at the scene.  Upon his arrival, Lurie heard Tinsley yelling.  These two police officers then joined Reardon by the driver's side door of the vehicle where Lurie joined Reardon in asking Tinsley to get out of the vehicle.

Godino, while still at the passenger's side door, reached into the vehicle and unbuckled Tinsley's seat belt.  Officers Reardon and Lurie then reached into the vehicle, grabbed

Tinsley, and tried to pull him out.  Tinsley actively resisted and "scream[ed]" for help, trying to get "someone [to] pay attention to what[ was] going on."  Godino came around to the driver's side of the vehicle and joined in the effort to remove Tinsley from the vehicle.  Avila went around to the passenger's side and pushed Tinsley while the other police officers pulled him.  Tinsley had his legs wedged under the steering wheel, which prevented the police officers from pulling him out.

During the course of the struggle to remove Tinsley from his vehicle, Tinsley struck Avila in the chest, and Lurie struck Tinsley in the face.  Godino also retaliated by punching Tinsley twice, hitting him in the chin and the chest.  Lurie also used knee strikes to try to get Tinsley out of the vehicle.  At some point, Lurie cut the seat belt, which had remained wrapped around Tinsley.  A fifth officer, James Green, then arrived to help.  Green was able to grab hold of Tinsley, and the officers dragged him out of the vehicle.

As stated supra, because the jury did not need to rely on the events that transpired thereafter to sustain Tinsley's convictions, we view the remaining facts in the light most favorable to Tinsley.  See Lynch, 483 Mass. at 641.  After Tinsley was dragged from his vehicle, he fell to the ground, and several police officers began beating him.  Once on the ground, Tinsley did not resist.  He tried to put his hands behind his

back so that the police officers would handcuff him and thus, he thought, stop hitting him. The police officers did not stop. Reardon struck Tinsley's collarbone and upper shoulder, and stomped on Tinsley's left hand. Lurie sprayed Tinsley with pepper spray. Green called Tinsley a "fucking nigger"[7] and kicked Tinsley in the head. While Tinsley was on the ground, an officer handcuffed him.[8] Tinsley suffered a broken nose, a broken finger, and a wound on the side of his head that required stitches.

2. Procedural history. After trial, a jury convicted Tinsley of assault and battery on Avila, disorderly conduct, resisting arrest, and carrying a dangerous weapon (a spring

---

[7] At trial, Officer Green denied that he or any other police officer swore at Tinsley or called him "any names."

[8] As Tinsley recalled at trial: "I know I was slammed on my head. Um, I hit the ground and . . . on the way down to the ground, all I could feel was blows to my body -- my whole body. My head - everywhere - coming everywhere. . . . They [were] hitting me, . . . they [were] kicking me, they [were] punching me, they [were] hitting me with whatever they had. . . . I know it was fist blows . . . , feet blows . . . at one point, I was on the ground . . . an officer came running -- I could see his boot coming to kick me in my face. That's when I turned my head and he kicked me right in the back of my head." Tinsley testified that, once a police officer handcuffed him, the police officers continued to hit him, and that one police officer had his boot on the side of Tinsley's face and ground his head into the ground.

assisted knife). The jury found Tinsley not guilty of a second count of assault and battery on Reardon.[9]

While the criminal charges against Tinsley were pending, he commenced this civil action in the Superior Court against the town of Framingham, the board of selectmen of Framingham (collectively, the municipal defendants), and the five police officers involved in his arrest, asserting a violation of the MCRA, as well as a variety of tort claims.[10] After the jury convicted Tinsley, but while his direct appeal from the convictions was pending in the Appeals Court, the defendants filed a motion for summary judgment, which a motion judge allowed in part and denied in part. The judge took no action on some of the claims and stayed the proceedings pending the

---

[9] The judge found Tinsley not responsible for the civil infraction of speeding.

[10] The complaint included nine claims: violation of the Massachusetts Civil Rights Act (MCRA), G. L. c. 12, §§ 11I & 11H against all of the defendants (count I); negligence against the municipal defendants (count II); negligent failure to provide medical care against all of the defendants (count III); intentional infliction of emotional distress against the police officers (count IV); assault against the police officers (count V); battery against the police officers (count VI); false arrest and false imprisonment against the police officers (count VII); negligent hiring, training, discipline, and retention against the municipal defendants (count VIII); and negligent infliction of emotional distress against all of the defendants (count IX).

Appeals Court's decision.[11]  After the Appeals Court affirmed Tinsley's convictions, the defendants filed a renewed motion for summary judgment on the remaining claims, which a different judge allowed.[12]  Tinsley appealed, and we transferred the case here on our own initiative.

Discussion.  We review a grant of summary judgment de novo "to determine 'whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law.'"  District Attorney for the N. Dist. v. School Comm. of Wayland, 455 Mass. 561, 566 (2009), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991).  Tinsley appeals only from the second summary judgment decision, where

---

[11] The judge ordered that judgment enter in favor of the municipal defendants on counts I, II, III, and VIII, but denied their motion for summary judgment on count IX.  She also ordered that judgment enter in favor of the police officers on counts III and IX, and on counts I, IV, V, VI, and VII, to the extent that the claims were brought against the police officers in their official capacities.  The judge took no action on counts I, IV, V, VI and VII to the extent the claims were brought against the police officers personally.

[12] To the extent Tinsley argues that the second motion judge erred in failing to adopt the Appeals Court's factual findings, the argument is flawed.  The Appeals Court, like all appellate courts, does not find facts.  In addition, the Appeals Court affirmed Tinsley's convictions in a memorandum and order pursuant to its former rule 1:28 (now rule 23.0).  Such a decision is not binding precedent, nor does it contain all of the relevant facts.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

the judge dismissed his remaining claims against the police officers in their personal capacities, including the violation of the MCRA (count I), intentional infliction of emotional distress (count IV), assault (count V), battery (count VI), and false arrest and false imprisonment (count VII).[13]

1. Application of Heck to State law claims. As the Supreme Court noted in Heck, 512 U.S. at 483, "the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights" (citation omitted). In the interest of "finality and consistency," however, the Court adopted "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." Id. at 485-486. See id. at 484 (affirming "strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction" [citation omitted]). See generally Cabot v. Lewis, 241 F. Supp. 3d 239, 257-259 (D. Mass. 2017) (applying reasoning of Heck to plaintiff's State law claims, including claim under MCRA and

---

[13] To the extent that Tinsley states that he is seeking relief from the dismissal of negligent infliction of emotional distress (count IX) against all of the defendants, he does so no more than in passing, and thus, he does not present any adequate appellate argument on the point. We therefore do not consider it. Mass. R. A. P. 16 (a) (9), as appearing in 481 Mass. 1628 (2019).

common-law claims for battery, assault, false imprisonment, false arrest, and intentional infliction of emotional distress).

We are not bound by Heck, whose holding binds only Federal courts; however, we adopt its guiding principle that to protect the validity of adjudicated criminal convictions, a plaintiff may not use a State civil action, including State tort claims and claims advanced under the MCRA, to collaterally attack the plaintiff's previous State criminal conviction.  We conclude that a plaintiff's civil action may proceed only where the action is based on facts, viewed in the light most favorable to the plaintiff, other than those necessary to sustain the plaintiff's criminal conviction and where the plaintiff demonstrates that the civil action, if successful, would not necessarily undermine the validity of the plaintiff's prior criminal conviction.  See Heck, supra at 486-487; Cabot, 241 F. Supp. 3d at 257.  Our conclusion is not intended to place an impregnable barrier between a plaintiff and the civil remedy to which the plaintiff is rightfully entitled under the law even where the plaintiff has his or her civil rights violated after having engaged in criminal conduct.  See Nelson v. Campbell, 541 U.S. 637, 647 (2004).  Rather, our conclusion is intended to prevent plaintiffs from challenging facts and arguments from which they are collaterally estopped by virtue of their criminal

conviction, while also preserving plaintiffs' rights to hold accountable those individuals who may have caused them harm.

2. <u>Application of our conclusion to Tinsley's claims</u>. To determine the validity of Tinsley's claims on appeal, we look to the relationship between those claims, the facts on which they rely, and the crimes of which the jury convicted him. See <u>VanGilder</u> v. <u>Baker</u>, 435 F.3d 689, 691 (7th Cir. 2006) (applying <u>Heck</u> requires trial court to "analyze the relationship between plaintiff's [42 U.S.C.] § 1983 claim and the charge on which he was convicted"). If Tinsley's claims are based on facts other than those that the jury needed to have found in order to convict him of assault and battery on a police officer, disorderly conduct, and resisting arrest,[14] his claims do not challenge the validity of those convictions, and his action may proceed. If, however, Tinsley's claims are based solely on the facts the jury needed to find in order to convict, those claims

---

[14] Tinsley's civil claims are unrelated to his conviction of carrying a dangerous weapon.

amount to a collateral attack on his convictions and are thus not cognizable.[15,16]

As an initial matter, in a civil action like the one here, we conclude that a plaintiff is collaterally estopped from asserting that any force used by the police officers was

---

[15] In support of his false arrest and false imprisonment claim, Tinsley asserted that Detective Godino and Officer Reardon detained Tinsley without reasonable or probable cause and without a warrant. That claim is barred, because if successful, it would necessarily imply the impropriety of all of Tinsley's convictions and, thus, would constitute an impermissible collateral attack on those convictions.

[16] To the extent that Tinsley argues that his claim may proceed because he commenced this civil action before he was convicted, and thus his claims cannot be viewed as an attempt to collaterally attack a conviction, the argument is misplaced. The claims at issue in this appeal are the same claims on which the first motion judge did not act because Tinsley's convictions were not yet final. Only after the Appeals Court affirmed Tinsley's convictions did the second motion judge act on the concomitant civil claims. The point is not whether Tinsley set out to collaterally attack a conviction but whether, in light of his convictions, his civil claims, if successful, would necessarily imply the invalidity of those convictions. The timing of the commencement of the action, under these circumstances, is not relevant. See Aucoin v. Cupil, 958 F.3d 379, 383 (5th Cir. 2020), quoting Okoro v. Callaghan, 324 F.3d 488, 490 (7th Cir.), cert. denied, 539 U.S. 910 (2003) ("It is irrelevant that [a plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, Heck kicks in and bars his civil suit").

We note, however, that where a plaintiff brings a civil action before or during the pendency of a criminal case against him, the plaintiff may have to amend his complaint once his conviction becomes final to remove his allegations from which he has become collaterally estopped.

excessive because the plaintiff was innocent of any wrongdoing. In proclaiming his innocence, the plaintiff challenges the facts that the jury necessarily found to sustain his convictions, and thereby seeks to impermissibly impugn those convictions. See Thore v. Howe, 466 F.3d 173, 180 (1st Cir. 2006). Therefore, to the extent that Tinsley argues his complete innocence, the argument is impermissible.[17] For example, because the jury convicted Tinsley of assault and battery of Avila, Tinsley may not now assert that he did not strike Avila, as the jury could not have convicted Tinsley of that charge without that finding. Thus, Tinsley's assertion of innocence would constitute an improper collateral attack on his assault and battery conviction. Our conclusion bars such a claim. See O'Brien v. Bellingham, 943 F.3d 514, 529 (1st Cir. 2019), quoting Thore, supra at 179-180 (excessive force claim "'so interrelated factually' with [plaintiff's] state convictions arising from those events that a judgment in [plaintiff's] favor would 'necessarily imply' the invalidity of those convictions"). See also DeLeon v. Corpus Christi, 488 F.3d 649, 656 (5th Cir. 2007) (Heck barred plaintiff's civil action because plaintiff did not

_____

[17] Although this argument cannot form the basis for Tinsley's civil action, it properly formed the basis for his defense at trial, as well as his argument on appeal from his convictions. Our judicial system relies on the jury to decide the truth, and on the direct appellate process and motion for a new trial to resolve any errors at trial.

allege "that his claims of excessive force are separable from his aggravated assault on the officer. Instead, the complaint maintains that he did nothing wrong, that he simply defended himself . . .").

a. Impermissible claims. Tinsley's MCRA claim, and his claims for intentional infliction of emotional distress, assault, and battery against the police officers individually arise largely out of the police officers' use of force against him, ostensibly when Tinsley was both inside and outside his vehicle.[18] We conclude that the jury could have found the facts necessary to convict Tinsley of assault and battery on Avila and disorderly conduct based on what occurred inside Tinsley's vehicle. Given Tinsley's conviction of resisting arrest, determining whether Tinsley's claims would be barred as a collateral attack on that conviction requires us to determine whether there are any facts on which Tinsley may properly base his claims. That, in turn, requires us to determine the point at which Tinsley was arrested.

_____

[18] In his complaint, Tinsley raised other arguments in support of his MCRA claim, including deprivation of medical care and the police officers' failure to intervene to prevent other police officers' conduct. Those arguments relate to two of Tinsley's other claims, negligence and negligent failure to provide medical care, for which the first motion judge granted summary judgment in favor of the defendants. As stated supra, Tinsley does not appeal from the first order granting summary judgment.

"An arrest occurs where there is (1) 'an actual or constructive seizure or detention of the person, [2] performed with the intention to effect an arrest and [3] so understood by the person detained.'" Commonwealth v. Grandison, 433 Mass. 135, 145 (2001), quoting Commonwealth v. Cook, 419 Mass. 192, 198 (1994). There was enough evidence to conclude, as a matter of law, that Tinsley was under arrest before the police officers pulled him from his vehicle. See Commonwealth v. Willis, 415 Mass. 814, 820 (1993) (considering length of encounter, nature of inquiry, possibility of flight, and danger to safety of police officers and public in whether investigatory stop becomes arrest); Commonwealth v. Sanderson, 398 Mass. 761, 766-767 (1986) (arrest occurred when multiple police officers blocked in defendant's vehicle and asked him to step out, and he was not free to leave, regardless of formal arrest forty minutes later); Commonwealth v. Santiago, 93 Mass. App. Ct. 792, 795 (2018) (looking to number of police officers, whether police officers blocked defendant's vehicle, and whether police officers' actions were proportionate "to the degree of suspicion that prompted the intrusion" to determine arrest had occurred [citation omitted]).[19]

---

[19] Tinsley is collaterally estopped only from challenging the facts that the jury needed to find to sustain his convictions; thus, to determine whether Tinsley's claims, if

"A person commits the crime of resisting arrest if he knowingly prevents or attempts to prevent a police officer . . . from effecting an arrest . . . by . . . using . . . physical force or violence against the police officer."  G. L. c. 268, § 32B.  At Tinsley's trial, the jury heard testimony from both Godino and Reardon regarding the amount of force that police officers are trained to use in certain circumstances. Additionally, the judge instructed the jury on the issue of unreasonable or unnecessary force in connection with the charge of resisting arrest:  "If a police officer uses unreasonable or excessive force to make an arrest, the person who is being arrested may defend himself, with as much force as reasonably appears necessary. . . .  If there is some evidence that the police used unreasonable or excessive force, the Commonwealth must prove, beyond a reasonable doubt, that the defendant did not act in self-defense."

To convict Tinsley of resisting arrest, then, the jury had to find that he used "physical force or violence against the police officer[s]," and that in doing so, that he was not acting in lawful self-defense.  G. L. c. 268, § 32B.  Because there was

---

successful, would necessarily challenge the validity of his convictions, we need only consider the narrowest version of events needed to sustain Tinsley's convictions.  Because Tinsley could have been arrested while inside his vehicle, we need not determine or comment on whether Tinsley continued to resist arrest outside his vehicle.

enough evidence to conclude that the arrest occurred before the police officers removed Tinsley from his vehicle, however, so too did Tinsley's actions that sustained his conviction of resisting arrest.  In other words, it was Tinsley's actions inside his vehicle -- his effort to prevent the police officers from removing him from the vehicle -- that sustained that conviction.  As such, to the extent that Tinsley contends that the police officers used excessive force while he was still inside his vehicle, such a claim, if successful, would amount to an impermissible collateral attack on his conviction of resisting arrest, and it may not proceed.

b.  Permissible claims.  In some circumstances, however, we conclude that an "excessive force claim brought against a police officer that arises out of the officer's use of force during an arrest does not necessarily call into question the validity of an underlying state conviction" and that our conclusion would not bar such a claim.  Thore, 466 F.3d at 180 (permitting plaintiff's "theory . . . that his excessive force claim need not impugn his convictions for assault and battery with a dangerous weapon in order to establish that [the officer] used excessive force").  See Havens v. Johnson, 783 F.3d 776, 782 (10th Cir. 2015), and cases cited (excessive force claim against police officer "not necessarily inconsistent with a conviction for assaulting the officer [because] the claim may be that the

officer used too much force to respond to the assault or that the officer used force after the need for force had disappeared").[20]  See also Aucoin v. Cupil, 958 F.3d 379, 382 (5th Cir. 2020) ("Put simply, there is no Heck bar if the alleged violation occurs 'after' the cessation of the plaintiff's misconduct that gave rise to his prior conviction"); Bush v. Strain, 513 F.3d 492, 498 (5th Cir. 2008) (excessive force claim not barred where it is "temporally and conceptually distinct" from plaintiff's prior conviction).

Because we concluded that the jury could have found the facts necessary to convict Tinsley of resisting arrest, assault and battery on Avila, and disorderly conduct based on what occurred inside the vehicle, Tinsley may base his civil claims on what he alleges occurred after the police officers forcibly removed him from his vehicle -- when the police officers allegedly continued to hit him, kicked him, and called him a "fucking nigger" -- as those claims, if successful, would not amount to a collateral attack on his convictions.  See Bush, 513 F.3d at 496, 500 (because plaintiff produced evidence that after she stopped resisting arrest and after she was handcuffed, police officer forced plaintiff's face into vehicle window,

---

[20] Tinsley did not argue the former rationale -- that while he resisted arrest, the police officers' use of force went beyond what was reasonable under the circumstances.

"injuring her jaw and breaking two of her teeth," "a favorable verdict on her excessive force claims will not undermine her criminal conviction"). See also Hardrick v. Bolingbrook, 522 F.3d 758, 764 (7th Cir. 2008) (permitting plaintiff's claim that officers used excessive force; that plaintiff resisted arrest by struggling while being handcuffed "at one point in time does not preclude the possibility" that he was "peaceably waiting" at another point in time); Schwind vs. Koste, U.S. Dist. Ct., No. 1:19-cv-05741, slip op. (N.D. Ill. June 4, 2020) (where plaintiff pleaded guilty to resisting arrest by one officer, plaintiff's excessive force claim not barred where plaintiff asserted second officer struck plaintiff in face while plaintiff was handcuffed); Bochart vs. Lowell, U.S. Dist. Ct., No. 13-11753-FDS, slip op. (D. Mass. Feb. 19, 2016) (court permitted plaintiff's claim that police officer's continued use of pepper spray after plaintiff stopped resisting constituted excessive force because "[a]ccepting that theory would not require accepting facts that would invalidate [the plaintiff's] conviction[s]").

Even where the use of force to effect an arrest is reasonable in response to an individual's resistance, the continued use of force may well be unreasonable, as an individual's conduct prior to arrest or during an arrest does not authorize a violation of his or her constitutional rights.

See Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996) (per curiam) (permitting excessive force claim that police officers beat plaintiff "beyond recognition" after he had already been arrested and handcuffed). See also McCann v. Neilsen, 466 F.3d 619, 622-623 (7th Cir. 2006) ("deputy's use of deadly force as a response was not reasonable" despite plaintiff's "assaultive and obstructive conduct"). In such a case, like the one here, a plaintiff's claims that the police officers in question violated his rights, whether pursuant to the MCRA or otherwise, may proceed because the claims are based on facts other than those that the jury needed to find to sustain the plaintiff's conviction. To hold differently would implicitly permit police officers, in response to a resisting individual, to exert as much force as they so choose "and be shielded from accountability under civil law," so long as the prosecutor could successfully convict the individual of resisting arrest. VanGilder, 435 F.3d at 692. Thus, to the extent that Tinsley's claims against the police officers personally relate to what occurred after he was removed from his vehicle, our conclusion does not bar those claims.

Conclusion. Tinsley is not collaterally estopped from basing his claims on the events that occurred after he was removed from his vehicle. Accordingly, taking those facts in the light most favorable to Tinsley, the nonmoving party, there

is a genuine issue of material fact whether the police officers used excessive force against him after he was removed from his vehicle.  Therefore, so much of the judgment dated August 31, 2018, pertaining to counts I (MCRA), IV (intentional infliction of emotional distress), V (assault), and VI (battery) against the police officers personally is vacated, and the matter is remanded to the trial court for further proceedings consistent with this opinion.[21]  In all other respects, the judgment is affirmed.[22,23]

So ordered.

---

[21] Tinsley may proceed on counts I, IV, V, and VI only to the extent he relies on the facts that describe the events that occurred after the police officers forcibly removed him from his vehicle.  In accordance with this opinion and the motion judge's earlier allowance of the defendants' motion for summary judgement regarding count I, Tinsley may not proceed on the theories that the police officers arrested him without probable cause, unreasonably seized him, or denied him medical care.

[22] This includes count VII, Tinsley's claim for false arrest and false imprisonment, which, as addressed supra, is barred.

[23] Because the second motion judge concluded that the holding in Heck barred all of Tinsley's then-remaining claims against the police officers, the judge did not consider the police officers' qualified immunity claims.  He also, for the same reason, denied Tinsley's motion to amend his complaint on the basis that any such amendment would be futile.  In light of our decision vacating a portion of the judgment, and our conclusion that not all of Tinsley's claims are barred, these issues, should they arise, should be addressed in the first instance by the trial court.