COMMONWEALTH vs. MARK D. LEONARDI.

Plymouth. October 7, 1992. - December 10, 1992.

Present: LIACOS, C.J., NOLAN, LYNCH, & GREANEY, JJ.

*Identification. Evidence*, Prior misconduct, Motive, State of mind, Telephone conversation.

A criminal defendant did not demonstrate that an identification of him made at a hospital in a one-on-one confrontation shortly after an assault was, in the circumstances, the product of an unnecessarily suggestive procedure, and the defendant's motion to suppress that identification and a subsequent in-court identification was correctly denied. [760-763]

At a criminal trial, no substantial risk of a miscarriage of justice was created by the admission in evidence of an order issued against the defendant pursuant to G. L. c. 209A directing him to refrain from abusing his then girlfriend, where that evidence related to the defendant's motive, intent, or state of mind some time later when he assaulted another man in his estranged girlfriend's house. [763-764]

At the trial of indictments for armed assault in a dwelling house and assault and battery by means of a dangerous weapon, evidence of a telephone conversation between the defendant and the victim while the victim was recovering from his injuries was admissible and properly admitted. [764-765]

INDICTMENTS found and returned in the Superior Court Department on June 10, 1986.

A pretrial motion to suppress evidence was heard by *James F. McHugh*, J., and the cases were tried before *William H. Carey*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Frank C. Corso* for the defendant.

*John E. Bradley*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant appeals from his convictions, after trial by jury, of armed assault in a dwelling house and assault and battery by means of a dangerous weapon.[1] We transferred this case here on our own motion. The defendant argues that the trial judge erred in: (1) improperly denying the defendant's motion to suppress an out-of-court identification; (2) admitting evidence of a court order directing the defendant to refrain from abusing his former girl friend, Odelia DeMiranda; and (3) admitting evidence of the victim's testimony regarding a telephone conversation with the defendant. There was no error and therefore we affirm the convictions.

From the evidence, the jury could have found the following facts. On the evening of March 29, 1986, the victim was assaulted at the house of his friend, Odelia DeMiranda, by a man whom he identified as the defendant. The victim was visiting DeMiranda from California. During the early 1980's, the victim had dated DeMiranda for two years when she lived in California.

That night he awoke to the sound of someone walking through the house. He observed a man standing in the bedroom doorway with a baseball bat across his shoulder. The man moved from the doorway toward the victim and asked, "What possessed you to come here?" as he swung the bat and struck the victim at least four times. The victim sustained blows to his head and arms. He attempted to shield further blows with a chair. The defendant smashed the chair and hit the victim in the legs and shins. This caused the victim to fall to the floor where he was repeatedly hit again.

The defendant then left the room and the victim heard water running. The defendant told the victim to go into the

---

[1]The defendant was sentenced to the Massachusetts Correctional Institution at Cedar Junction to from fifteen to twenty years on the conviction of armed assault in a dwelling house, and to from nine to ten years on the conviction of assault and battery by means of a dangerous weapon. The sentences are to be served concurrently. The defendant was found not guilty on a third indictment charging assault with intent to murder, G. L. c. 265, § 15 (1990 ed.).

bathroom; the victim was unable to walk, so the defendant pulled him up. Once in the bathroom, the defendant forced the victim into a tub of hot water, where he proceeded to hit him again with the baseball bat and held his face under water for brief periods. He also struck the victim in the face with the bat and his fist. The victim testified that the defendant's face was two to three inches from his. During the assault, the lights were on in both rooms. Further, the defendant identified himself as "Mark," and told the victim to explain his injuries as self-inflicted. The entire ordeal lasted approximately twenty-five to thirty minutes. After the defendant left the bathroom, the victim observed the defendant replacing a window pane near the front door and, subsequently, fleeing the premises. The victim crawled from the bathroom into the bedroom. Approximately thirty minutes later, DeMiranda returned home. On finding the victim, she brought him to Tobey Hospital in Wareham.

While being treated at the hospital, the victim was interviewed by Detective Norman W. Sylvester of the Wareham police department. The victim described his attacker as a white male, between six feet, one inch, and six feet, three inches tall, 170 pounds, with a beard, mustache, and medium-length hair. The victim told the detective that he could identify his assailant.

Detective Sylvester then had a conversation with DeMiranda. As a result, he dispatched an officer to the defendant's residence to request that he come to the police station for questioning. By the time Detective Sylvester arrived at the station the defendant had voluntarily presented himself. Sylvester brought him to a room where he informed the defendant of the investigation and read him his Miranda rights. The defendant denied any wrongdoing and volunteered to go to the hospital to see whether the victim could recognize him. Detective Sylvester again advised the defendant of his Miranda rights in the presence of Sergeant George Randall. The defendant, who was not under arrest, voluntarily accompanied Detective Sylvester and Sergeant Randall to Tobey Hospital in an unmarked police vehicle. On arrival,

Detective Sylvester entered the hospital X-ray room and told the victim that he had someone outside who matched the description the victim had given. The detective turned on all the lights in the room and brought in the defendant for viewing. The officers and the defendant stopped three to four feet from the victim. Sylvester testified that the victim stated, "That's the person who assaulted me." Thereafter, the defendant was led from the room, handcuffed, placed under arrest, and transported to the police station for booking. At the station the defendant stated his height to be six feet, three inches and his weight as 170 pounds.

As a result of the assault, the victim required hospitalization for one week, received eighty-seven stitches to his head, and sustained a broken elbow and hand.

1. *Motion to suppress pretrial identification.* The defendant moved to suppress the identification made at the hospital, maintaining that the pretrial identification procedure was unnecessarily suggestive and had caused irreparable mistaken identification and a denial of his due process rights. The defendant denied that his presence at the hospital was voluntary. Further, the defendant asserted that there were no exigent circumstances militating in favor of a one-on-one hospital identification, and that a fair lineup could have been arranged. Correspondingly, the defendant moved to have any subsequent in-court identifications by the victim suppressed. After an evidentiary hearing the judge denied the defendant's motion to suppress, ruling the totality of the circumstances indicated that the identification procedure was not necessarily so suggestive as to deny the defendant his due process rights. While the judge agreed that "it would have been better if Detective Sylvester had not volunteered" that he had someone who fit the description supplied by the victim, it was not so suggestive as to taint the identification. The judge found that both the out-of-court and in-court identifications were admissible. A single justice of this court denied the defendant's application for interlocutory appeal.

In order to suppress identification testimony the defendant must show that the procedures employed, viewed in the total-

ity of the circumstances, were so unnecessarily suggestive and conducive to mistaken identification as to deny the defendant due process of law. See *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 542 (1990); *Commonwealth* v. *Santos*, 402 Mass. 775, 781 (1988); *Commonwealth* v. *Storey*, 378 Mass. 312, 317 (1979), cert. denied, 446 U.S. 955 (1980).

There was no error in the judge's ruling that the defendant did not meet the burden of demonstrating that the identification procedure was unnecessarily suggestive. The judge found that identification arose from a straightforward showing to the victim of a person who matched the description supplied by the victim. The judge correctly ruled that exigent circumstances were not required. One-on-one confrontations conducted promptly after the commission of a crime are not violative of due process rights despite the absence of exigent or special circumstances. See *Commonwealth* v. *Storey, supra* at 317 (one-on-one identification not precluded from admission solely because a lineup could have been easily arranged); *Commonwealth* v. *Barnett*, 371 Mass. 87, 92 (1976), cert. denied, 429 U.S. 1049 (1977) (witness's life need not be in jeopardy). See also *Commonwealth* v. *Williams*, 399 Mass. 60, 67-68 (1987); *Commonwealth* v. *Bowden*, 379 Mass. 472, 479 (1980); *Commonwealth* v. *Bumpus*, 354 Mass. 494, 497-502 (1968), cert. denied, 393 U.S. 1034 (1969); *Commonwealth* v. *Jones*, 25 Mass. App. Ct. 55, 59-60 (1987). Such identification procedures are justified by the need for prompt criminal investigation while the victim's "recollection or mental image of the offender is still fresh, before other images crowd in or his attempts to verbalize his impressions can themselves distort the original picture," and it "provides the witness with good opportunity for an accurate identification." *Commonwealth* v. *Barnett, supra* at 92.

Although it would have been better if Detective Sylvester had not told the victim that he was bringing in someone who fit the description given by the victim, we agree with the judge's conclusion that the statement did not create any special element of unfairness. See *Commonwealth* v. *Williams, supra* at 67 (despite officer's statement that he thought he

"got the guys," unequivocal identification shortly after alleged crime not impermissibly suggestive); *Commonwealth* v. *Harris*, 395 Mass. 296, 299 (1985) (officer's statement that "they would be bringing someone in who matched the description she had given" did not make confrontation unfair); *Commonwealth* v. *Bowden*, *supra* at 479 (identification admissible where witness gave detailed description of defendant and one-on-one confrontation occurred two hours after murder); *Commonwealth* v. *Napolitano*, 378 Mass. 599, 603 n.6 (1979) (officer's statement that police had "someone here who fits" description not unnecessarily suggestive but merely states purpose of showing photographs to witness); *Commonwealth* v. *Alicea*, 376 Mass. 506, 509, 514-515 (1978) (one-on-one identification admissible where witness identified defendant who was voluntarily present one and one-half hours after shooting); *Commonwealth* v. *Chotain*, 31 Mass. App. Ct. 336, 341 (1991) (officers' statements prior to hospital showup that victim would see a man with a gash close to where victim described striking intruder not unnecessarily suggestive, because victim had opportunity to observe assailant during incident and unequivocally recognized defendant). Compare *Commonwealth* v. *Moon*, 380 Mass. 751, 757 (1980) (identification of defendant by victim of assault, who had given "rather general" description of assailant, tainted by unnecessary suggestiveness of officer's saying it "sound[ed] like" defendant and showing victim single photograph).

We conclude that the judge properly denied the defendant's motion to suppress the out-of-court identification. Since we conclude that the out-of-court identification is admissible, there is no basis to challenge the in-court identification. *Commonwealth* v. *Paszko*, 391 Mass. 164, 172 (1984). *Commonwealth* v. *Clifford*, 374 Mass. 293, 304 (1978).

2. *Evidence of prior behavior.* The defendant also contends that the admission in evidence of an order issued pursuant to G. L. c. 209A (1990 ed.) (209A order), portrayed him as a violent individual, capable of committing the type of crimes charged, and thereby deprived him of a fair trial. At trial,

defense counsel did not object to the admission of this evidence. We examine the evidence to ascertain whether there has been a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Elam*, 412 Mass. 583, 585 (1992); *Commonwealth* v. *Wood*, 380 Mass. 545, 547 (1980); *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

The prosecutor presented evidence that the 209A order, directing the defendant to refrain from abusing DeMiranda, had been served five months prior to the assault and battery. Sergeant Randall testified that, over a two-month period prior to the issuance of the 209A order, he was called to the house shared at that time by DeMiranda and the defendant, from one to two times a week for domestic unrest. Sergeant Randall described his observations of DeMiranda and the defendant's relationship as "stormy," requiring one of the two to leave the house in order to restore the peace. Officer Robert Jesus of the Wareham police department testified that he served the 209A order on the defendant on October 21, 1985. The defendant argues that any potential relevance this evidence possessed is outweighed by the prejudicial effect it had on the jury.

While the Commonwealth is prohibited from introducing evidence of a defendant's criminal or wrongful behavior to show a tendency of bad character or propensity to commit the crime charged, such evidence is admissible for other relevant probative purposes. See *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986); *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 815-816 (1973). "Furthermore, '[t]he admission of such evidence generally is "a matter on which the opinion of the trial judge will be accepted on review except for palpable error.". . .' " *Commonwealth* v. *Martino*, 412 Mass. 267, 280 (1992), quoting *Commonwealth* v. *Young*, 382 Mass. 448, 462-463 (1981). See *Commonwealth* v. *Cordle*, 404 Mass. 733, 744 (1989), *S.C.*, 412 Mass. 172 (1992).

"Without the challenged evidence" the assault and battery "could have appeared to the jury as an essentially inexplicable act of violence." *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 269 (1982). In this situation where a man is assaulted

in the house of a female friend by her estranged boy friend, admitting evidence of such prior events enables the prosecutor to present a full picture of the incident. *Commonwealth v. Chalifoux, supra* at 816. Since this evidence related to motive, intent, or state of mind, its admission was within the sound discretion of the judge. *Commonwealth v. Weichell*, 390 Mass. 62, 73 (1983), cert. denied, 465 U.S. 1032 (1984) (relevant evidence that indicates motive generally admissible). There was no error, much less a substantial risk of a miscarriage of justice. Contrary to the defendant's claim advanced here for the first time, the law does not require a judge to give limiting jury instructions regarding the purpose for which evidence is offered unless so requested by the defendant. See *Commonwealth v. Bradshaw, supra* at 270; *Commonwealth v. Monsen*, 377 Mass. 245, 252 (1979).

3. *Evidence of telephone conversation.* Defense counsel moved for a mistrial after the Commonwealth's opening statement, because the prosecutor alluded to a telephone conversation between the defendant and the victim.[2] The judge denied the motion. After a voir dire the victim was permitted to testify that, while convalescing, he received a telephone call as described in the prosecutor's opening statement. Defense counsel objected to the testimony on the ground that the Commonwealth failed to establish the victim's ability to identify the voice of the defendant.

The evidence was admitted properly. *Commonwealth v. Perez*, 411 Mass. 249, 262 (1991). *Chartrand v. Registrar of Motor Vehicles*, 345 Mass. 321, 325 (1963). Here the victim would have had the opportunity to listen to the defendant's voice in the course of the thirty-minute assault and battery,

---

[2]Defense counsel objected to the following portion of the prosecutor's opening statement: "You will hear that at one point . . . there was a phone call . . . . [T]he voice on the other end identified himself as being Joey . . . . [T]here was some brief conversation, and this Joey on the other end says, 'Are you going to testify against that guy in court?' At this point [the victim] started to recognize the voice and says, 'Who is this?' The voice . . . says, 'This is Mark. Wherever you are, I'm going to find you and I'm going to do it to you again.' "

which occurred about two weeks before the telephone conversation. The victim testified that, during the conversation, he recognized the voice as being the same voice he heard the night of the assault and battery. Not only did the evidence meet the test of admissibility under *Commonwealth* v. *Perez, supra,* and *Chartrand* v. *Registrar of Motor Vehicles, supra,* but the caller even identified himself to the victim as "Mark," as he had done the night of the assault and battery. To contend that the evidence was not admissible borders on the frivolous.

*Judgments affirmed.*