COMMONWEALTH vs. DONALD C. VARNUM, JR.

No. 95-P-420.

Franklin. October 12, 1995. - December 28, 1995.

PRESENT: JACOBS, LAURENCE, & LENK, JJ.

*Threshold Police Inquiry. Search and Seizure,* Threshold police inquiry.
*Arrest.*

Police officers' observations of the operator of a motor vehicle were admis-
    sible in evidence at the trial of a complaint for operating a motor vehi-
    cle while under the influence of alcohol and after suspension of license,
    where the officers observed the defendant in the course of a lawful in-
    vestigation of the vehicle, which was stopped in an isolated and dark
    area off a State highway, after they had received a police radio message .
    that the described vehicle bearing that license plate may have been in-
    volved in a recent burglary and might contain stolen property, including
    a shotgun; in the circumstances, the officers' ordering the defendant out
    of the vehicle and handcuffing him were reasonable safety precautions.
    [574-576]

COMPLAINTS received and sworn to in the Orange Division
of the District Court Department on October 5, 1992.

On appeal to the jury session of the Greenfield Division, a
pretrial motion to suppress evidence was heard by *Herbert
H. Hodos*, J.

An application for interlocutory appeal was allowed by
*O'Connor*, J., in the Supreme Judicial Court for the county
of Suffolk, and the appeal was reported by him to the Ap-
peals Court.

The case was submitted on briefs.
*Byron D. Caplice* for the defendant.
*Elizabeth D. Schiebel*, District Attorney, & *Jane E. Mul-
queen*, Assistant District Attorney, for the Commonwealth.

JACOBS, J. Facing charges in the jury-of-six session of the
District Court for operating a motor vehicle while under the
influence of alcohol (fourth or subsequent offense) and after

suspension of his license for drunk driving, the defendant filed a motion to suppress any observations of him "obtained as a result of a warrantless stop and arrest" on October 3, 1992. After a hearing, the judge allowed the motion. A single justice of the Supreme Judicial Court allowed the Commonwealth's application for leave to appeal pursuant to Mass.R.Crim.P. 15(b) (2), 378 Mass. 884 (1979), and reported the matter to this court. We vacate the suppression order.

We summarize the facts from the written decision of the judge as supplemented by uncontroverted testimony at the motion hearing. Vermont State Trooper Craig LaPorte gathered information from three witnesses that three males in an identified vehicle may have vandalized and burglarized a home in Brattleboro, Vermont, and stolen a shotgun and other property during the late afternoon of October 3, 1992. At approximately 9:24 P.M. that evening, Trooper LaPorte transmitted a "B.O.L." (be on the look-out) radio message to "all New England law enforcement agencies" indicating that a white Pontiac Firebird automobile with Massachusetts registration "PUCK22" may have been involved in a burglary and vandalism in the Brattleboro area and that the vehicle was occupied by three white males and might contain stolen property, namely a "T.V., V.C.R. and a shotgun." That message was heard by Trooper Duane Nicholson of the Massachusetts State police who, while on patrol at approximately 9:30 P.M., informed Officer Joseph Yukl of the Erving (Massachusetts) police department, of its contents. Approximately an hour later, a white Pontiac Firebird passed Officer Yukl on Route 2. Unable to see the registration number, Officer Yukl followed. Just as his cruiser passed another vehicle that was between him and the Pontiac, the Pontiac pulled off Route 2 and stopped at a barrier in a sludge dump. Officer Yukl followed, stopped his cruiser immediately behind the Pontiac and saw that its Massachusetts registration was "PUCK22." He then radioed his dispatcher and asked for help. At that point, the Pontiac was blocked by the barrier in front and the cruiser behind. Officer Yukl was then in fear

for his safety due to the darkness and isolation of the area and his knowledge that a shotgun had been stolen.[1] He turned on his lights[2] and saw the operator and the passenger switch places inside the Pontiac. Utilizing a loudspeaker, he told the occupants of the Pontiac to place the ignition keys on its roof. When they complied, he drew his gun and approached the vehicle. Simultaneously, Trooper Nicholson and an officer from Gill arrived. Trooper Nicholson, in fear for his safety, see note 1, *supra*, drew his gun. The three officers with weapons drawn, ordered the occupants out of the Pontiac. The defendant and a woman emerged from the vehicle and were handcuffed after being ordered to lie on the ground. It apparently was at that time that the police made the observations the defendant seeks to suppress. The officers then looked inside the Pontiac and observed items that allegedly had been stolen in the Vermont burglary.[3]

The judge determined that "not only did Officer Yukl not have probable cause to make an arrest but . . . [he also] did not have the requisite specific and articulable facts to make an investigative stop . . . . The information that he obtained was that three males were involved in [the Brattleboro crime] driving a white Pontiac Firebird with Massachusetts registration number PUCK22. The vehicle that he stopped

---

[1] In his decision, the judge made no findings as to whether Officer Yukl actually was in fear but merely reported that he so testified. Trooper Nicholson testified that Officer Yukl had his gun drawn when he arrived on the scene and that he then also drew his gun. He testified he was in fear because he thought the occupants of the Pontiac had a shotgun and because of the isolation and darkness of the area ("in the middle of nowhere"). There was no cross-examination of Trooper Nicholson with respect to his testimony that he was in fear. The judge generally appears to have credited the testimony of the officers. In the circumstances, we adopt the testimony of both Officer Yukl and Trooper Nicholson concerning their being in fear. See *Commonwealth* v. *Willis*, 415 Mass. 814, 816-817 (1993).

[2] Trooper Nicholson testified that when he arrived the blue lights of Officer Yukl's cruiser were on. Officer Yukl testified on cross-examination that he was positive that the blue lights were not on. The judge made no finding on the point.

[3] At a prior bench trial, a judge allowed the defendant's motion for a required finding of not guilty on a complaint for receiving stolen property.

did match up but there was a man and a woman in the vehicle and not three males." The judge concluded his written discussion with the observation: "Automobiles do not commit crimes; it is people who do."

The issue we consider is "whether the police had a reasonable suspicion, based on specific, articulable facts and reasonable inferences, that the defendant had committed, was committing, or was about to commit a crime." *Commonwealth* v. *Willis*, 415 Mass. 814, 817 (1993). The judge's findings, which we need not recite here, amply support the conclusion that Trooper LaPorte's radio message was based upon a reasonable suspicion grounded on specific, articulable facts that three male occupants of a white Pontiac Firebird bearing registration "PUCK22" had stolen a shotgun and other property from a home in Vermont in the late afternoon of October 3, 1992. See *Commonwealth* v. *Cheek*, 413 Mass. 492, 494-495 (1992). Officer Yukl, informed of the substance of that message and properly relying on it, *United States* v. *Hensley*, 469 U.S. 221, 232-233 (1985), had similar articulable basis for concluding, immediately upon identifying the registration of the white Pontiac Firebird, that it might contain the property reported stolen in Vermont and *one* or more persons responsible for the crime. No authority has been brought to our attention supporting the notion that a stop is justified only if the number of persons in a vehicle identified with a reported crime exactly matches the number of suspects alleged to have been involved in that crime. See *United States* v. *Longmire*, 761 F.2d 411, 420 (7th Cir. 1985) (discrepancy in the number of occupants found in a stopped vehicle and the number reported as involved in the crime does not prevent officers from taking protective measures). Accordingly, we conclude that Officer Yukl was justified in initiating an investigation of the already stopped vehicle. See *Terry* v. *Ohio*, 392 U.S. 1, 21 (1968); *Commonwealth* v. *Riggins*, 366 Mass. 81, 86 (1974) (*Terry* principles are applicable to automobile stops); *Commonwealth* v. *Andrews*, 34 Mass. App. Ct. 324, 329 (1993).

Once the investigative circumstances for a stop are established, "[t]he pertinent inquiry is whether the degree of intrusion is reasonable in the circumstances." *Commonwealth v. Moses*, 408 Mass. 136, 141 (1990). "The test is an objective one." *Commonwealth v. Sanderson*, 398 Mass. 761, 766 & n.9 (1986). Reasonably suspecting that there was a shotgun in the Pontiac, knowing that it turned off Route 2 as his vehicle was following, and then seeing the occupants of the vehicle switch seats, Officer Yukl was fully justified in continuing to block the Pontiac and asking its occupants to place the keys on the roof. In the circumstances, these were "reasonably prudent protective measure[s] and did not change the investigative stop into an arrest." *Commonwealth v. Moses, supra.*

Given their safety fear, the isolated and dark location, see *Commonwealth v. Fitzgibbons*, 23 Mass. App. Ct. 301, 306 (1986), and their collective knowledge of the circumstances, *Commonwealth v. Andrews*, 34 Mass. App. Ct. at 327, including their reasonable belief that there may have been a stolen shotgun in the Pontiac, the officers were "entitled to take reasonable precautions for their protection." *Commonwealth v. Willis*, 415 Mass. at 820. The passage of a few hours since the reported crime did not dissipate the information the officers possessed concerning the shotgun. See *United States v. Longmire*, 761 F.2d at 420. Reasonable precautions in effecting a *Terry* stop may include using handcuffs and forcing a defendant to lie on the ground. See *United States v. Laing*, 889 F.2d 281, 285-286 (D.C. Cir. 1989), cert. denied, 494 U.S. 1008 (1990); *Commonwealth v. Robbins*, 407 Mass. 147, 151-152 (1990); *Commonwealth v. Pandolfino*, 33 Mass. App. Ct. 96, 98 (1992) ("the use of cuffs, if necessary to accomplish a permissible inquiry, does not convert a *Terry* stop to an arrest"); *Commonwealth v. Andrews*, 34 Mass. App. Ct. at 329. Here, ordering the defendant and the woman out of the Pontiac and handcuffing them were reasonable security measures, in the circumstances, to prevent ac-

cess to the shotgun by them or any other occupant.[4] Police officers are "not required to gamble with their personal safety." *Commonwealth* v. *Robbins, supra* at 152.[5]

Accordingly, the officers' observations of the defendant during the encounter should not have been suppressed. The order allowing the defendant's motion to suppress is vacated, and an order shall enter denying the motion to suppress. The matter is remanded to the District Court for further proceedings.

*So ordered.*

---

[4]Officer Yukl testified that he returned to the Pontiac to look for "any weapons" or "anyone else in the car."

[5]The defendant relies heavily on *Commonwealth* v. *Bottari*, 395 Mass. 777 (1985). However, "[t]he case before us involves a concern for safety that the *Bottari* case lacked." *Commonwealth* v. *Willis*, 415 Mass. at 820. Also, there is ample evidence here of "other fear-provoking circumstances." *Commonwealth* v. *Bottari, supra* at 782.