## COMMONWEALTH *vs.* ROSANIO MANTINEZ.

No. 97-P-0187.

Suffolk. January 9, 1998. - April 3, 1998.

Present: PORADA, KAPLAN, & BECK, JJ.

*Search and Seizure,* Threshold police inquiry, Probable cause, Exigent circumstances. *Probable Cause. Constitutional Law,* Search and seizure, Probable cause.

The conduct of police officers in stopping the defendant's vehicle, asking the defendant to leave his car, requesting his license and registration, and patfrisking him upon noting a large bulge in one of his pants pockets, amounted to a *Terry*-type threshold inquiry, justified by the officers' reasonable suspicion, based on an informant's tip and their own observations, that the defendant had committed a crime [515-517]; alternatively, the circumstances could be viewed as a basis for lawful arrest [517-518].

In the circumstances of a lawful *Terry*-type inquiry, police officers' warrantless search of the defendant's car was justified by the officers' probable cause to believe, based on a reliable informant's tip corroborated by their own recent observations, that the car would contain evidence of a crime; consequently, heroin found inside the car was lawfully seized and properly admitted in evidence. [518-520]

INDICTMENT found and returned in the Superior Court Department on November 3, 1994.

A pretrial motion to suppress evidence was heard by *James P. Donohue,* J., and the case was tried before *R. Malcolm Graham,* J.

*Raymond Buso* for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. A jury in Superior Court convicted the defendant of trafficking on October 27, 1994, in more than twenty-eight grams of heroin, G. L. c. 94C, § 32E(*c*)(2). He appeals, arguing that a judge erred in denying his pretrial motion to suppress the evidence of 1,494 bags of heroin found during the search of an

automobile he was driving at the time. He claims that he was arrested without probable cause before the search and that the police searched the vehicle without a warrant or probable cause to believe they would find drugs therein. With attention to the facts as found and to their proper analysis, the arguments fail, and we affirm the conviction.

At the pretrial motion to suppress, one witness, Detective Joseph Driscoll of the Boston police department, testified. The motion judge made written findings of fact which we recount, "sometimes supplemented by uncontested testimony at the suppression hearing, in some detail because nuance and atmospherics are important in deciding cases of this kind." *Commonwealth v. Rivera*, 33 Mass. App. Ct. 311, 312 (1992).

In August, 1994, Detective Driscoll, an officer with twenty-three years experience, including fourteen years in the "drug control unit," was assigned to the "major case unit" of the Boston police department. He was working with Detective McCarthy. These officers had received information from a confidential informant, "CI," that there was an organized group that was transporting heroin from the Revere area into Boston using certain automobiles with "secret compartments" to hide the drugs. CI said he had personally observed how these "hide cars" operated, and he described the cars, including their makes (mainly Chryslers and Dodges), colors, and license plate numbers. CI also informed Driscoll that one "Junior Ramon" was a main figure in the criminal group. Driscoll followed up and obtained a picture of Junior Ramon from another enforcement agency; he did not show the picture to CI to confirm.

Toward the beginning of September, 1994, the detectives used CI's information to make a pair of arrests. They followed one of the described hide cars, a gold Chrysler, from Revere to a location in Boston where they observed drug deals made from the car. They arrested two men who occupied the car and, acting in accordance with CI's information, they entered the car and pressed buttons which caused the back seat to move so as to reveal a stash of heroin. Driscoll testified at the present suppression hearing that the information provided by CI in the September case had been "perfect."

To turn to the facts of the present case. On October 27, 1994, around 9:30 P.M., Detectives Driscoll and McCarthy, from their unmarked police car in Roxbury, spotted a car previously identified by CI as a hide car: a four-door, gray Chrysler with a

foretold license plate number. The officers followed the car and watched it come to a stop at the corner of Warren and Quincy Streets in Roxbury. A man entered the car openhanded and left within two minutes with his hand in his jacket pocket. Believing this was a drug deal, the detectives called for assistance and followed the Chrysler as it drove to Dorchester and pulled into a bank parking lot on Adams Street. Another car was parked there with its headlights on: it sped away when the detectives pulled into the lot and stepped out of their car.

Driscoll and McCarthy, approaching the Chrysler, asked the defendant (driver and sole occupant) to go to the rear of the Chrysler. They requested license and registration. Seeing a large bulge in one of the defendant's pants pockets, Driscoll pat-frisked him for a weapon and found $2,900 in bills. The defendant presented a Massachusetts driver's license in the name of Rosanio Mantinez — Driscoll recognized the defendant as Junior Ramon.

At this point, McCarthy entered the Chrysler and activated the rear defrost and hit a button underneath a tin plate on the floor of the car (here following CI's instructions). The rear seat came down, revealing thirty "bricks" containing a large number of bags of heroin. The defendant pushed Driscoll and ran. A responding officer gave chase, apprehended the defendant five minutes later, and returned him to the rear of the Chrysler.

*Analysis.* The defendant claims he was arrested illegally, that is, without probable cause, before the search, and the heroin as "fruit" of this arrest should be suppressed. The answer: all that preceded the search may properly be viewed (1) as a lawful threshold inquiry (our preferred interpretation) or alternatively (2) as providing probable cause for a lawful arrest and thus tantamount to such an arrest although not consummated by formal arrest; and (3) there was probable cause for the search (in some respects not congruent with the probable cause required for an arrest).

1. *A threshold inquiry.* Although the defendant did not clearly argue the point to the judge below, he now claims that at some (ill-defined) moment before the car search he was under arrest, wrongly so, he contends, because "probable cause," that is, ground for belief that he had committed a crime, was lacking. See *Commonwealth* v. *Santaliz,* 413 Mass. 238, 241 (1992). If the defendant was arrested illegally at any point before the search of the Chrysler, then the evidence procured at the time,

say the $2,900 in bills, would be tainted and could not be relied on for justifying the car search or basing a prosecution. See *Commonwealth* v. *Jacobsen*, 419 Mass. 269, 275 (1995).

We suggest, however, that the defendant was not under arrest before the search, and the actions of the police to that point are better characterized as amounting to a *Terry*-type threshold inquiry, justified because the police had a "reasonable suspicion" that the defendant had committed a crime. See *Terry* v. *Ohio*, 392 U.S. 1 (1968). The question, stop or arrest, is fact bound,[1] and as the court said in *Commonwealth* v. *Willis*, 415 Mass. 814, 819-820 (1993), "In deciding whether this encounter [between police and suspect] was an arrest or 'merely' a stop, we do not apply a bright line test. The answer depends on the proportional relationship of the degree of intrusiveness on the defendant to the degree of suspicion that prompted the intrusion. We should consider 'the degree to which the defendant's movement is restrained, the degree of force used by the police and the extent of the intrusion.' Specific factors include the length of the encounter, the nature of the inquiry, the possibility of flight, and, most important, the danger to the safety of the officers or the public or both." (Citations omitted.)

Here the defendant was not held at gunpoint nor was he handcuffed. The intrusive acts — asking the defendant (a suspected figure in a drug distribution ring) to leave his car, requesting his license and registration, and pat-frisking him upon noting the dubious condition of his clothing — all fit within the scope of a *Terry*-like investigative stop: recent decisions cited in the margin confirm this conclusion.[2] We add that the fact the defendant was in a position to run from the scene is

[1]As McCarthy entered the Chrysler to search it, the defendant had already been "seized" because, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Commonwealth* v. *Torres*, 424 Mass. 153, 158 (1997), quoting from *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985), which quoted from *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980). But a seizure does not necessarily rise to the level of an "arrest" as that term has been defined in Fourth Amendment and art. 14 jurisprudence. See discussion in *Borges*, 395 Mass. at 791-794.

[2]For decisions examining the boundaries between *Terry*-type stops and arrests, see *Commonwealth* v. *Willis*, 415 Mass. 814 (1993); *Commonwealth* v. *Williams*, 422 Mass. 111 (1996); *Commonwealth* v. *Fitzgibbons*, 23 Mass. App. Ct. 301 (1986); *Commonwealth* v. *Crowley*, 29 Mass. App. Ct. 1 (1990); *Commonwealth* v. *Andrews*, 34 Mass. App. Ct. 324 (1993); *Commonwealth* v.

evidence that he was not being "forcibly detained." *Commonwealth* v. *Eagles*, 419 Mass. 825, 833 (1995). Driscoll indeed said that the defendant had not been placed "under arrest" while McCarthy was manipulating the buttons.

The detectives had reason for the stop in the bank parking lot.[3] They observed a car named a hide car by an informant who weeks earlier had given "perfect" information leading to arrests and seizure of heroin. The officers themselves observed in Roxbury what in their experienced view they believed was a drug transaction.[4] Their suspicion could only have been deepened by the episode in the bank parking lot in Dorchester. See *Commonwealth* v. *Kennedy*, 426 Mass. 703, 708 (1998) ("the whole 'silent movie' " analogy).

2. *A basis for lawful arrest.* After the defendant was stopped on reasonable suspicion, the detectives found $2,900 in the defendant's pants pocket, strong evidence that they had in fact observed a drug transaction in Roxbury. And Driscoll recognized the defendant as Junior Ramon and believed that he had produced a false license. "Since there is no doubt that the initial stop was justified, events subsequent to the lawful stop, coupled with the factors that supplied the police officers with ample reasonable suspicion to make the investigatory stop, provided the police officers with probable cause to arrest . . . the defendant." *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 106 (1997). The facts in the present case appear as strong as those held to encompass probable cause for arrest in, e.g., *Va Meng Joe* and *Commonwealth* v. *Kennedy*, 426 Mass. at 704.

Probable cause for an arrest, even if not acted upon by a

---

*Varnum*, 39 Mass. App. Ct. 571 (1995); *Commonwealth* v. *White, ante* 168 (1998). In these cases — where suspects were handcuffed or held at gunpoint or transported in cruisers — the police actions were held to be "threshold inquiries" reasonable in the circumstances. For a discussion of the shaping of *Terry* to allow police in particular conditions to take "measures of force more traditionally associated with arrest than with investigatory detention," see 4 LaFave, Search and Seizure § 9.2(d) (3d ed. 1996).

[3]"Reasonable suspicion" exists where the police action is " 'based on specific, articulable facts and reasonable inferences [drawn] therefrom' rather than on a 'hunch.' " *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990).

[4]The defendant argues that this belief was not reasonable because the officers did not see anything exchange hands between the man who entered the Chrysler and the defendant. But the man's short stay and departure with hand in pocket was suggestive of a transaction. Cf. *Commonwealth* v. *Kennedy*, 426 Mass. 703, 710-711 (1998). And the officers had additional information from a reliable informant reasonably supporting their suspicion. See *Commonwealth* v. *Alvarado*, 423 Mass. 266, 268-269 (1996).

formal arrest, brings with it the "search incident to arrest" exception to the warrant requirement for a search. See *Commonwealth* v. *Brillante*, 399 Mass. 152, 155 n.6 (1987). But the Commonwealth did not attempt to establish at the hearing that a search of the Chrysler was necessary to prevent the defendant from reaching for a weapon or destroying evidence (the grounds for the exception); and the search here went beyond a sweep of the passenger compartment of the car.

3. *The search.* "A warrantless search of an automobile generally must be based on probable cause." *Commonwealth* v. *White*, 422 Mass. 487, 496 (1996). In order to conduct the present search, the detectives "would have to have known of enough facts and circumstances 'to warrant a person of reasonable caution in believing' the defendant was transporting [heroin] in the [Chrysler]." *Commonwealth* v. *Cast*, 407 Mass. 891, 895 (1990), quoting from *Commonwealth* v. *Gullick*, 386 Mass. 278, 283 (1982). After the stop, Driscoll recognized the defendant as Junior Ramon and found the $2,900. When these independent observations are taken together with the information furnished by CI, probable cause for the search may seem to have been achieved; but the defendant protests that CI's information had become "stale" at the time of the search, and the total basis predicated for the search did not support a finding of probable cause.

As the motion judge wrote, where an unnamed informant's tip is relied on to buttress probable cause for a search, art. 14 of the Massachusetts Declaration of Rights demands that the Commonwealth "demonstrate some of the underlying circumstances from which (a) the informant gleaned his information (the 'basis of knowledge' test), and (b) the law enforcement officials could have concluded the informant was credible or reliable (the 'veracity' test)." *Commonwealth* v. *Cast*, 407 Mass. at 896. Independent police corroboration of the details of a tip can compensate for deficiencies in either test. *Ibid.*

The defendant concedes that CI's personal observations of the hide car and how they operated satisfied the "basis of knowledge" test. But regarding the "veracity" phase, the defendant points out that the arrest of the two men on CI's information occurred six weeks before the stop in the present case, and there was no evidence about the precise time when the detectives received the description of the gray Chrysler as a hide car or of Junior Ramon as a participant in the distribution

ring. Driscoll testified to a conversation with CI on the day before October 27, but he could not remember the content. Yet it was clear from Driscoll's testimony that he and his colleague were investigating a "drug distribution" that was an "on-going activity" and thus "time is of less significance." *Commonwealth v. Fernandes*, 30 Mass. App. Ct. 335, 342 (1991). We add that, whatever the exact dates on which CI furnished information to the detectives, their own observations from the Roxbury incident onward may be considered to give "fresh" corroborative details supporting the accuracy of CI's tips.[5]

Further attacking the Commonwealth's satisfaction of the "veracity" test, the defendant observes that on October 27, 1994, the two men previously arrested on CI's tip had not yet been convicted. To be sure, "[a]n arrest may turn out to be a dud," *Commonwealth v. Grady*, 33 Mass. App. Ct. 917, 917 (1992). Where, however, CI's information in the weeks preceding October 27 had proved perfect and led not only to the arrests but also to the recovery of heroin in an unusual location, "[t]he accuracy of such information . . . warranted an inference that the informant was reliable." *Commonwealth v. Perez-Baez*, 410 Mass. 43, 46 (1991). To which may be added the police corroboration mentioned above.

We conclude, as did the motion judge, that the detectives had probable cause to believe that the Chrysler would contain evidence of a crime.

The defendant goes on to contend that the police needed proof of "exigent circumstances" to sustain the warrantless search of the Chrysler, but the court has recently held to the contrary: "[W]hen an automobile is stopped in a public place with probable cause, no more exigent circumstances are required by art. 14 beyond the inherent mobility of an automobile itself to justify a warrantless search of the vehicle." *·Commonwealth*

---

[5]As we noted at part 2 above, the array of factors also would have allowed the detectives to arrest the defendant on probable cause before the search of the Chrysler. But "[t]he establishment of probable cause to believe that 'a person is guilty of a crime does not necessarily constitute probable cause to search the person's [property].' " *Commonwealth v. Olivares*, 30 Mass. App. Ct. 596, 600 (1991) (citation omitted). See 2 LaFave, Search and Seizure § 3.1(b), at 7 (3d ed. 1996): "Each requires a showing of probabilities as to somewhat different facts and circumstances — a point which is seldom made explicit in the appellate cases." At all events, here the criminal activity (drug trafficking) *is tied so closely to the object of the search* (the Chrysler) that the factors we have mentioned bear on probable cause for both arrest and search.

v. *Motta*, 424 Mass. 117, 124 (1997). See *California* v. *Carney*, 471 U.S. 386, 392-393 (1985).[6] Any suggestion that the detectives should have applied for an "anticipatory" warrant after hearing from CI is also without merit. See *Commonwealth* v. *King*, 35 Mass. App. Ct. 221, 225 (1993).

*Judgment affirmed.*

---

[6] Deciding the motion herein before the *Motta* opinion, the judge found exigent circumstances justifying the warrantless search in the absence of a "plain and ample" opportunity to secure a warrant to conduct a search.