COMMONWEALTH *VS.* SAMOSA[1] RUIZ
(and nine companion cases[2]).

No. 99-P-788.

Middlesex. September 18, 2000. - April 13, 2001.

Present: JACOBS, KAPLAN, & SMITH, JJ.

*Arrest. Practice, Criminal,* Motion to suppress. *Evidence,* Motive, Identification.

A Superior Court judge correctly denied criminal defendants' motions to suppress evidence, where police officers were warranted in conducting an investigative stop of the defendants sitting in a vehicle and where the degree of intrusion was warranted based on the officers' observations, knowledge, and reasonable suspicion that the defendants were armed; further, there was probable cause to arrest the defendants when the officers discovered a sawed-off shotgun and a mask on the ground two or three feet from the car. [348-351]

At the trial of indictments arising from an attempted home invasion, testimony was properly admitted regarding a previous armed robbery of one of the victims, assertedly committed by friends of the defendant, where the evidence was relevant to motive and where the judge gave the jury adequate instructions on their consideration of the testimony. [351-352]

INDICTMENTS found and returned in the Superior Court Department on June 25, 1997.

Motions to suppress evidence were heard by *Carol S. Ball,* J., and the cases were tried before *Judith A. Cowin,* J.

*James Hammerschmith,* Committee for Public Counsel Services, for Samosa Ruiz.

*Laurie M Halbert* for Edelmiro Mosquea.

*Jennifer C. Roman,* Assistant District Attorney (*David W. Cunis,* Assistant District Attorney, with her) for the Commonwealth.

---

[1]The defendant's name appears as Somosa Ruiz in several documents in our record, but we use the spelling in the indictments.

[2]Four indictments against Samosa Ruiz and five indictments against Edelmiro Mosquea.

JACOBS, J. After their convictions by a Superior Court jury on various weapons and assault charges relating to an attempted home invasion in Lowell, the defendants appeal, claiming that their motions to suppress should have been allowed. The defendant Mosquea raises an additional issue, alleging the improper admission of prior bad act evidence. We affirm the convictions.

1. *The motions to suppress.* The relevant facts as found by the motion judge, who was not the trial judge, and supplemented by uncontroverted testimony at the suppression hearing, see *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. 311, 312 (1992), are as follows: Responding to a radio call of "a suspicious motor vehicle" at about 10:40 P.M. on April 12, 1997, Lowell police Officer Donald Crawford drove to the corner of Varnum Avenue and Bennington Street. The police dispatcher had related that a caller at 805 Varnum Avenue (an address at the corner of Varnum and Bennington Street) reported that four men had gotten out of a car parked on Bennington Street and walked into the nearby woods. No description of the car or of the men was given. When he arrived, the officer did not see the men, and while he noticed two cars parked on Bennington Street about a hundred feet from the corner of Varnum Avenue, he saw nothing suspicious, so he left.

About forty minutes later, the officer received a second radio message stating that a caller had reported a home invasion in progress at 842 Varnum Avenue, involving four men with guns. Responding to the call and at a point about two hundred yards away from 842 Varnum Avenue, he saw two men walking toward Bennington Street in the heavy rain. He saw one of them pulling off a face mask, which he described as a kind of "ski" mask. Believing they were involved in the reported incident, he drove past them, called for a backup cruiser, and then turned around to look for the men.

As Officer Crawford turned onto Bennington Street, he saw the backup cruiser approach from the opposite direction and also turn onto Bennington Street. The following events occurred "pretty much simultaneously." He observed two men, whom he believed to be the same two men who had walked past him on Varnum Avenue, getting into one of the two cars parked on

Bennington Street that he had seen earlier. One of the men sat in the driver's seat and the other in the rear passenger seat. The officers had stopped their cruisers in such a way as to block forward motion of the car.

As the backup officer was getting out of his cruiser, he called Officer Crawford's attention to two other men running down Bennington Street. The backup officer thought he saw one of them with a gun.[3] For his safety, Officer Crawford drew his revolver as he got out of his cruiser, and remained behind his door, using it as a shield, and ordered the two men in the car to keep their "hands up" and "not to move." He then moved to a more protected position, this time using the backup cruiser as a shield. Officer Crawford used a flashlight to illuminate the car, and intermittently turned it on and off as a safety measure.[4] Both defendants were "very fidgety," and the defendant in the back seat suddenly brought his hands up with what appeared to be the handle of a weapon. Officer Crawford told him not to move or he would be shot. Turning away from the officer and making a motion with his hand as if dropping the weapon, that defendant turned back with the weapon no longer in his hand. Additional backup officers had arrived at that time, and the defendants were ordered to get out of the car and "secured on the ground," but not handcuffed. The officers then discovered a loaded, sawed-off shotgun and two live shells on the ground two or three feet from the rear passenger door of the car and a nylon mask outside the driver's side door, whereupon they arrested the defendants.

The defendants challenge the motion judge's conclusion that the police had probable cause to arrest them when the officers

---

[3]The backup officer did not testify, and little more is related by Officer Crawford about that officer's participation in the subsequent events other than that he also had drawn his service revolver when he got out of his cruiser.

[4]Officer Crawford testified that, based on the report of armed persons, he considered the approach to the two men "extremely dangerous" for himself and any citizens who might be in the area and utilized his "tactical" training and experience to shield himself and not present himself as a target in the event the men might respond by shooting.

blocked their car,[5] essentially arguing that the radio calls were based on tips from anonymous callers, which did not meet the requirements of the *Aguilar-Spinelli*[6] test. Their reliance on this analysis is misplaced. The cases in which police rely primarily on radio transmissions as grounds for stopping a car are inapposite. Contrast *Commonwealth* v. *Medeiros*, 45 Mass. App. Ct. 240, 242 (1998). Here, the case turns on citizen reports of ongoing suspicious activity and criminality and police observations made in the course of responding to those reports. Compare *Commonwealth* v. *Matthews*, 355 Mass. 378, 381 (1969); *Commonwealth* v. *Stoute*, 422 Mass. 782, 790-791 (1996). Contrary to the defendants' argument, we need not examine the reliability of the information given to the police by the callers, who did not identify or describe any person or vehicle and who, in any event, appear to have been eyewitnesses. Compare *Commonwealth* v. *Smigliano*, 427 Mass. 490, 492 (1998); *Commonwealth* v. *White*, 44 Mass. App. Ct. 168, 172 (1998). As Officer Crawford approached the scene of the attempted home invasion soon after it was reported, he reasonably was suspicious of the two men he saw walking nearby, particularly when he saw one of them pulling off a face mask.[7] When the officer met the backup cruiser and saw the two men getting into one of the cars he had seen earlier when responding to the first report of four men leaving a car and going into the woods nearby, and also saw two other men running down Bennington Street, his suspicion that the men entering the car had committed a crime was well founded and substantial, and more than adequate to justify a *Terry*-type investigative stop.[8] *Commonwealth* v. *White*, *supra* at 173. The critical issue is whether the police actions in conducting the stop converted it to an arrest.

---

[5]The motion judge concluded that the police had probable cause to arrest the defendants at the time their car was blocked by the cruisers. The judge's ultimate findings and rulings of law may be reexamined on appeal. *Commonwealth* v. *Alvarado*, 420 Mass. 542, 544 (1995). We reach the same conclusion, but on the basis of events that occurred at a later stage of the encounter.

[6]See *Commonwealth* v. *Upton*, 394 Mass. 363, 374-377 (1985).

[7]The judge credited the officer's testimony, based on his training and experience, that home invaders often wore masks or bandanas to hide their identities.

[8]*Terry* v. *Ohio*, 392 U.S. 1 (1968).

"Once the investigative circumstances for a stop are established, '[t]he pertinent inquiry is whether the degree of intrusion is reasonable in the circumstances.' *Commonwealth* v. *Moses*, 408 Mass. 136, 141 (1990)." *Commonwealth* v. *Varnum*, 39 Mass. App. Ct. 571, 575 (1995). "The extent of the danger is important in assessing whether the force used by the police in the encounter was commensurate with their suspicion. The police are, of course, entitled to take reasonable precautions for their protection." *Commonwealth* v. *Willis*, 415 Mass. 814, 820 (1993).

Given the suspicion of the defendants' involvement in the home invasion, the report that they were armed, and their entry into a car where their actions could not be fully observed, the police were warranted in taking steps for their own safety before conducting an inquiry. Those steps included (1) blocking the car to prevent flight, which could have been dangerous to the officers standing outside of their vehicles and might have been accompanied by gunfire; (2) drawing their revolvers and remaining shielded by the cruisers; (3) illuminating the defendants' car with lights from the cruisers and a flashlight; (4) ordering the defendants not to move and to keep their hands visible; and (5) ordering the defendants from the car and directing them to lie on the ground. Less intrusive investigatory measures may have put the officers in significantly greater danger. Accordingly, their precautions were reasonable and did not convert the stop into an arrest. See *Commonwealth* v. *Moses, supra* at 141-142; *Commonwealth* v. *Willis, supra* at 819-821; *Commonwealth* v. *Fitzgibbons*, 23 Mass. App. Ct. 301, 306-309 (1986); *Commonwealth* v. *Andrews*, 34 Mass. App. Ct. 324, 328-330 (1993); *Commonwealth* v. *Varnum, supra* at 575-576, and cases cited.

It was only when the officers discovered the sawed-off shotgun and the mask that reasonable suspicion of criminality was transformed into probable cause to arrest.[9] *Commonwealth* v. *Va Meng Joe*, 425 Mass. 99, 106 (1997) ("events subsequent

---

[9]"[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979), cert. denied, 446 U.S. 955 (1980). "The test is an objective one." *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992), and cases cited.

to the lawful stop, coupled with the factors that supplied the police officers with ample reasonable suspicion to make the investigatory stop, provided the police officers with probable cause to arrest"). See *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. 48, 52 & n.9 (2000). The defendants' motions to suppress properly were denied.

2. *Alleged prior bad acts evidence.*[10] The trial judge ruled prior to trial that testimony about a previous armed robbery in Lawrence at the home of Slaine Pena, one of the victims in the present case, would be admissible to show motive and identification. At trial, the defendants' motion for mistrial, grounded on the admission of that testimony, was denied. The defendants complain the prejudicial value of the testimony outweighed any probative value. They also complain that the judge's limiting instructions were inadequate.

Pena testified as a witness to the attempted home invasion in Lowell.[11] His additional contested testimony was as follows: After the Lawrence robbery, which occurred in January or February, 1997, he had identified the two men who robbed him to the police, and they were arrested. Pena had seen the defendants in the company of those two men "[m]any times." After those arrests, Ruiz approached him, called him a "rat," displayed a gun, and questioned why he made a report to the police. There was a second and similar encounter with Ruiz. Mosquea was nearby, but said nothing. This encounter took place about a week before the attempted home invasion at 842 Varnum Avenue.

We conclude there was no error in admitting Pena's contested testimony. It established a relationship between the defendants and the two men who were involved in that prior robbery and was, therefore, relevant to motive in the present case. Relevant evidence related to motive is admissible subject to the sound

---

[10]Although this argument appears only in Mosquea's brief, Ruiz has adopted and joined that argument.

[11]Pena testified that while he was visiting his cousin at 842 Varnum Avenue on the night of the attempted invasion, four armed men, three with masks or hoods over their faces, attempted to invade 842 Varnum Avenue. He identified the defendants as two of those men. He stated that, during the confrontation, he called 911 and broke a window, screaming out to attract attention, and that the four men retreated shortly thereafter.

discretion of the judge. *Commonwealth* v. *Leonardi*, 413 Mass. 757, 764 (1992). "Evidence of a hostile relationship between the defendant and the victim may be admitted as relevant to the defendant's motive." *Commonwealth* v. *Hunter*, 416 Mass. 831, 837 (1994). The judge forcefully instructed the jury that the Lawrence robbery was not an issue in this case and that robbery was not to be considered attributable to the defendants. Particularly in view of Pena's testimony that the defendants were not the two men who robbed him in Lawrence, this instruction was adequate. The evidence of motive was more than marginally relevant and not unduly prejudicial. The defendants fail to show an abuse of the judge's discretion either in the admission of the motive evidence or in her denial of their motion for a mistrial. See *Commonwealth* v. *Martino*, 412 Mass. 267, 282 (1992).

The judge offered to give "a limiting instruction that [Pena's contested testimony] is admitted only as to motive." The offer was not accepted. Ruiz's counsel expressly rejected it and Mosquea's counsel stated that it was "virtually impossible" for jurors to obey the proposed instruction. There is no merit to the defendants' argument that such an instruction nevertheless should have been given. Unless requested, a judge generally is not required to give limiting instructions on the purpose or use of evidence. *Commonwealth* v. *Leonardi, supra.*

*Judgments affirmed.*